**ORAL ARGUMENT NOT YET SCHEDULED**

CASE NO. 13-7019

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

FREEDOM WATCH, INC.
Plaintiff-Appellant,

v.

ORGANIZATION OF PETROLEUM EXPORTING COUNTRIES
Defendant-Appellee.

---

APPEAL FROM AN ORDER
OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF OF PLAINTIFF-APPELLANT FREEDOM WATCH, INC. FOR
REVERSAL OF THE DISTRICT COURT'S ORDER AND REQUEST FOR
ORAL ARGUMENT

---

Larry Klayman, Esq.
FREEDOM WATCH, INC.
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

Attorney for Appellant

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Appellant Freedom Watch hereby certify pursuant to Circuit Rule 28(a)(1) that:

**A. Parties and Amici**

The parties that appeared in the district court are Plaintiff Freedom Watch and Defendant Organization of Petroleum Exporting Countries.

**B. Rulings Under Review**

The rulings under review are the January 15, 2013 Order and memorandum opinion of the District Court (Walton, J.), in *Freedom Watch, Inc. v. Organization of Petroleum Exporting Countries*, D.D.C. No. 12-731.

**C. Related Cases**

Appellant is not aware of any related cases before this Court or currently pending.

Appellant is aware that there are similar cases from other courts including *Freedom Watch, Inc. v. OPEC*, No. 08-cv-21630 (S.D. Fla. Dec. 22, 2008); (2) *Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916 (11th Cir. 2003);  and (3) *Int'l Ass'n of Machinists & Aerospace Workers v. OPEC* ("*IAM*"), 477 F. Supp. 553 (C.D. Cal. 1979).

# **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............i

TABLE OF CONTENTS ..........................................................................ii

TABLE OF AUTHORITIES ...................................................................v

GLOSSARY ...........................................................................................x

JURISDICTIONAL STATEMENT.........................................................1

ISSUES PRESENTED ...........................................................................1

STATEMENT OF THE CASE................................................................2

STATEMENT OF FACTS .....................................................................5

SUMMARY OF ARGUMENT ..............................................................7

STANDARD OF REVIEW ....................................................................8

ARGUMENT .........................................................................................8

   I. The District Court Did Not Have To Address Whether OPEC Is Immune From Suit And, In Any Event, Erred In Providing A Means For Defendant To Be Insulated From Any Liability For Its Unlawful Conduct......................................8

   II. Dismissing This Case Based On Improper Service, And Thereby Immunizing Defendant From Any Liability For Its Flagrant Breach Of Antitrust Laws, Which Has Significant International Reach And Global Impact, Clearly Violates U.S. Law, International Laws, And Public Policy........................................................9

   III. The Court's Involvement Is Necessary In This Matter, Matter, Given That Politicians Have Failed To Step-In.......................................................................10

   IV. In Any Event, Service Of Process Was Proper...............................................10

   V. OPEC Had Actual Notice Of This Lawsuit....................................................12

   VI. Ineffective Service Of Process Would Deem The Sherman Antitrust Act Meaningless...........................................................................................................13

VII. The District Court Has Wide Discretion To Liberally Approve Alternate Methods Of Service...............................................................................17

    A.  A Variety Of Alternative Methods Have Been Used For Service Of Process Under Rule 4(f)(3), Including Service Via Email And Fax.......17

    B.  A Courts Have Authorized Service On An Attorney Representing A Party As A Valid Alternative Method For Service.................................18

    C.  An Alternative Method Of Service Can Be Effectuated As Provided Under The Foreign Sovereign Immunities Act, 28 U.S.C. §1608..........19

VIII. This Court Has Personal Jurisdiction.............................................................21

IX. Defendant's Other Claims Are Similary Meritless  ........................................23

X. State Action Doctrine Is Inapplicable To This Case........................................26

CONCLUSION ....................................................................................................28

CERTIFICATE OF COMPLIANCE ....................................................................30

CERTIFICATE OF SERVICE .............................................................................31

## <u>TABLE OF AUTHORITIES</u>

*Brookshire Bros., Ltd. v. Chiquita Brands*, Int'l,
2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) .............................................18

*California Clippers, Inc. v. United States Soccer Football Asso.*,
314 F. Supp. 1057 (N.D. Cal. 1970) ......................................................................22

*Hartford Fire Ins. v. California*,
509 U.S. 764 (1993) ..............................................................................................27

*International Shoe v. Washington*,
326 U.S. 310, 66 S. Ct 154 (1945) .......................................................................21

*In re Potash Antitrust Litig.*,
667 F. Supp. 2d 907, 931 (N.D. Ill. 2009) ............................................................18

*In re Ski Train Fire in Kaprun Austria on Nov. 11, 2001*,
*343* F.Supp.2d 208 (S.D.N.Y. 2004) ...............................................................10,11

*LG Elecs, Inc. v. Asko Appliances, Inc.*,
2009 WL 1811098, at *4 (D. Del. June 23, 2009) ................................................18

*Liberty Media Holdings, LLC v. Vingay.com*,
2011 WL 810250 (D. Ariz. March 3, 2011) ..........................................................17

*Milliken v. Meyer*,
311 U.S. 457, 463................................................................................................21

*Montanez-Miranda v. Banco Progreso Internacional De Puerto Rico*,
973 F. Supp. 89, 91 (D.P.R. 1997) .......................................................................12

*Northern Pacific Railway v. United States,*
356 U.S. 1,4 (1958). ............................................................................................13

\* Authorities chiefly relied upon are marked with asterisks.

*Philip Morris USA, Inc. v. Veles*, Ltd,
2007 WL 725412, at *2–3 (S.D.N.Y. Mar. 12, 2007) ...........................................18

*\*Prewitt Enters., Inc. v. Organization of Petroleum Exporting Countries,*
353 F.3d 916 (11th Cir. 2003) ............................................................11, 14, 15, 16

*\*Rio Props., Inc. v. Rio Int'l Interlink,*
284 F.3d 1007, 1016........................................................................................12,17

RSM *Prod. Corp. v. Fridman*,
2007 WL 2295907, at *6 (S.D.N.Y. Aug. 10, 2007) .........................................18

*Rutland Railway Corp. v. Brotherhood of Locomotive Eng.*,
307 F.2d 21, 29 (2d Cir. 1962), cert. den., 372 U.S. 954, 9 L. Ed. 2d 978, 83 S. Ct.
949 (1963) .........................................................................................................22

*Sherer v. Construcciones Aeronauticas,*
*S.A.*, 987 F.2d 1246 (6th Cir. 1993) ....................................................................12

*U.S. Commodity Futures Trading Com'n v. Aliaga*,
272 F.R.D. at 621 (S.D. Fla. 2011) ...................................................................18

*United States v. Aluminum Co. of America*,
 148 F.2d 416 (2d Cir. 1945) ..............................................................................27

*United States v. Cook*,
594 F.3d 883, 886 (D.C. Cir. 2010) ......................................................................8

*United States v. Sisal Sales Corp.*,
274 U.S. 268 (1927) ...........................................................................................27

*\*United States v. Watchmakers of Switzerland Information Center, Inc.*,
1963 Trade Cas. (CCH) P70,600.....................................................................25, 26

*Velidor v. L/P/G Benghazi*,
653 F.2d 812 (3rd Cir. 1981) ..............................................................................12

*W. S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*, Int'l,
493 U.S. 400 (1990) .................................................................................27

*Xcentric Ventures, LLC v. Karsen, Ltd.*,
2011 WL 3156966, at *2 (D. Ariz. July 26, 2011) ..................................17

## STATUTES AND RULES

15 U.S.C. § 1 ........................................................................................1, 5

15 U.S.C. § 4 et seq. ................................................................................12

15 U.S.C. § 15 ......................................................................................1, 5

15 U.S.C. § 26 .......................................................................................1,5

28 U.S.C. § 1291......................................................................................1

28 U.S.C. § 1331 .....................................................................................1

28 U.S.C. § 1608 ...............................................................................19, 20

Federal Rule of Civil Procedure Rule 4(f)(3).....................................9, 16

# **GLOSSARY**

"OPEC" stands for Organization of Petroleum Exporting Companies.

"FSIA" stands for the Foreign Sovereign Immunities Act, 28 U.S.C. §1608.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this case pursuant to 28 U.S.C. §1331 because the matter arises under the U.S. antitrust laws, including Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Anti-Trust Act, 15 U.S.C. §§15, 26. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. §1291. This appeal is from a final order of the District Court entered on January 15, 2013 that disposes of all of Plaintiff's claims. The Notice of Appeal was timely filed on January 29, 2013.

## ISSUES PRESENTED

1. Whether an unincorporated association can be served through the Federal Rules of Civil Procedure if its host foreign country has not allowed any forms of service of process?

2. Whether foreign entities can effectively immunize themselves from American antitrust laws simply because the foreign country has not provided a method for service of process or prevents service of process?

3. Whether a foreign country's law prohibiting all forms of service of process will preempt the Federal Rules of Civil Procedure, which allow for such process?

4. Whether the district court improperly dismissed the complaint without allowing for alternative methods of service of process?

5.  Whether a foreign entity that has actual notice of a lawsuit and has retained American counsel actively representing it in court can claim that it was not properly served?

6.  Whether a foreign entity can be served through its attorneys who are located in the United States?

## STATEMENT OF THE CASE

For over thirty years, Defendant-Appellee ("Defendant"), Organization of Petroleum Exporting Countries, ("OPEC"), has colluded to fix the price of oil and gasoline in order to divide markets and artificially raise the price of oil for. OPEC must now be held legally accountable for its financially and economically devastating acts that directly violated U.S. antitrust laws. During these difficult times, oil prices continue to rapidly escalate at an alarming rate, predominantly as a result of Defendant's illegal anti-competitive practices. For Americans, where the price of gasoline has risen to over $5.00 a gallon in some states, Defendant's violations of U.S. antitrust laws has caused significant financial hardship, and has left a devastating economic impact.

OPEC's conduct constitutes an outrageous restraint of trade, which directly extends to American soil where OPEC has perpetrated a blatant violation of U.S. antitrust laws. Despite OPEC's illicit actions, however, which have substantially affected American and international economies, OPEC now seeks to circumvent

the laws of this nation and avoid any repercussions for their financially devastating conduct by unjustifiably claiming that service of process was not proper.

Despite OPEC'S claim, however, service of process was properly effectuated on Defendant through multiple methods, including personal service and mail. Specifically, personal service of a copy of the summons and complaint was delivered by hand to an Intake Officer for OPEC, acting as an agent for OPEC's Security General, who accepted service of the documents on behalf of OPEC's Secretary General. Moreover, Plaintiff also ensured that a copy of the documents was sent by Austrian mail to OPEC on or about May 15, 2012 and also served Defendant's attorneys located in Washington, D.C. Moreover, further evidencing the fact that service on OPEC was proper, Defendant clearly had actual timely notice of this action, as evidenced by its active participation in this litigation.

Notwithstanding this, the lower court, in its January 15, 2013 Order, dismissed this action for lack of service of process and, in doing so, essentially determined that OPEC is immune from service and thus, insulated from liability for its past and future violations of U.S. antitrust laws. Specifically, the lower court addressed the extreme limitations on service of process under Austrian law, which "specifically prohibits (1) direct service from abroad by private parties; (2) service of process on an international organization without the involvement of the Austrian Federal Ministry; and (3) any service of process on OPEC without the express

3

consent of the Secretary General of OPEC." (JA__) Additionally, the lower court

further recognized that OPEC had not filed a waiver of service there were no

alternative means of serving OPEC provided by federal law, there were no

internationally agreed means reasonably calculated to give notice such as those

means authorized by the Hague Convention on the Service Abroad of Judicial and

Extrajudicial Documents. (JA___). Thus, under the lower court's reasoning,

service of process on OPEC could only be properly effectuated by obtaining the

express consent of the Secretary General of OPEC. Simply put, OPEC has to

expressly agree to an action brought against it. As a result of severely limiting the

available method of service, the lower court dismissed the action for lack of

service of process.

  To allow such a limited method of service is not only unreasonable but also

imprudent, since it essentially allows OPEC to avoid any and all liability for its

illicit conduct by simply withholding its consent to be subjected to the action.

There is no doubt that Defendant's actions are blatant, intentional, and per se

violations of U.S. antitrust laws. However, this is a case of first impression, as

Defendant's conduct has never been adjudicated on the merits in an American

Court of law. As such, this determination of this case on its merits is significant in

order to addresses the power of the United States to enforce its laws and essentially

determine whether a foreign entity can immunize itself from U.S. antitrust laws

simply by refusing to provide any reasonable means to effectuate service of process. Thus, it is clear that OPEC cannot and should not be able to escape liability for its anti-competitive practices, which have caused oil prices to dramatically increase during already difficult economic times for Americans, and is crippling American consumers.[1]

## STATEMENT OF FACTS

On May 7, 2012 Plaintiff Freedom Watch ("FW") filed suit against Defendant OPEC alleging violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Anti-Trust Act, 15 U.S.C. §§15, 26.  On May 14, 2012, Defendant was personally served with a copy of the summons and complaint at its headquarters located in Vienna, Austria. More specifically, personal service of the documents was delivered by hand to Frederick Luger, ("Luger"), an Intake Officer for OPEC, who accepted service of the documents on behalf of OPEC's Secretary General.

Luger, acting as an agent for OPEC's Security General, did not reject or refuse service of process but simply accepted the documents. In fact, Defendant readily concedes that the summons and complaint were timely received by hand delivery, and consequently, had full notice of the pending action. However, Defendant mistakenly believes that the documents were served by Larry Klayman,

---

[1] It is also well known that some members such as Iran, Saudi Arabia, and Venezuela use oil revenues to finance terrorism and terrorist groups in acts against Americans and others.

counsel for Plaintiff, when, in fact, the documents were served by a non-party to this action. Moreover, to exhaust all other reasonable means of service, Plaintiff also ensured that a copy of the summons and complaint was sent by Australian mail to OPEC on or about May 15, 2012.

Approximately two weeks later, Defendant filed a Motion for Extension of Time requesting nearly two months to respond with a dispositive motion. Defendant then moved for a bifurcated briefing schedule in order to first address the issue of whether service of process was proper. Defendant then sought to dismiss this case by claiming that service of process was not proper. Despite having nearly three months to file a dispositive motion, Defendant instead served Plaintiff with thousands of pages of pleadings and documents, which were insignificant and had little to no probative value.

Defendant then illogically contended that service was improper and that it lacked actual notice of this suit. However, Defendant's incongruous argument is not only absurd, but is also blatantly frivolous, given the voluminous record OPEC filed and its continuous participation in this litigation. Defendant was undoubtedly served properly, as evidenced by Defendant's own concession, and Defendant had full and timely notice of this suit, as evidenced by Defendant's own conduct.

Moreover, in spite of Defendant's contention, Plaintiff requested that the Court exercise its liberal discretion and provide for an alternative method of

service. The District Court denied Plaintiff's request, refusing to exercise its broad

discretion, and subsequently dismissed the case.


## SUMMARY OF ARGUMENT

The District Court erred in improperly dismissing this action for lack of

service of process, particularly since Plaintiff effectuated service on OPEC through

numerous means and Defendant clearly had actual notice of this action, given its

active participation in the litigation.

Moreover, in dismissing this case on the basis that service on Defendant was

improper, the District Court essentially insulated OPEC from any liability for its

violations of U.S. antitrust laws. Specifically, by ruling that OPEC can only be

served with its own consent, the lower court improperly provided OPEC with

immunity for violating U.S. law. To allow such a limited method of service is not

only unreasonable but also imprudent, since it essentially allows OPEC to avoid

any and all liability for its illicit conduct by simply withholding its consent to be

subjected to the action. Thus, the District Court's Order should be reversed and a

specific method of service of process be determined so as to avoid any uncertainty.

## STANDARD OF REVIEW

This appeal raises questions of law which are reviewed *de novo. United States v. Cook*, 594 F.3d 883, 886 (D.C. Cir. 2010).

## ARGUMENT

### The District Court Did Not Have To Address Whether OPEC Is Immune From Suit And, In Any Event, Erred In Providing A Means For Defendant To Be Insulated From Any Liability For Its Unlawful Conduct.

The District Court dismissed this action based on procedural grounds that venue was improper. Since the basis for dismissal was limited solely to improper basis, the District Court did not have to address whether OPEC is immune from suit. However, the District Court went beyond the appropriate bounds of discussion in its order dismissing the action solely based on improper venue and, instead, essentially held that OPEC was insulted from any liability for its unlawful conduct simply because of the virtual impossibility of effectuating service of process on OPEC. In fact, the only manner of proper service, according to Defendants, is to obtain their consent, which is unreasonable as Defendants can simply avoid any legal action by refusing service.

Instead of exercising its discretion as provided by law to authorize an alternative method of service of process, the Court's reasoning that service was improper effectively insulated Defendant from any liability. Simply put, if nobody throughout the country can effectuate service on OPEC, then OPEC is effectively

immune to antitrust laws and any laws whatsoever. Rather than limit its order to the issue of venue, the Court erred by addressing the issue of immunity and essentially holding that OPEC was insulated from any liability.

### Dismissing This Case Based On Improper Service, And Thereby Immunizing Defendant From Any Liability For Its Flagrant Breach Of Antitrust Laws, Which Has Significant International Reach And Global Impact, Clearly Violates U.S. Law, International Laws, And Public Policy.

To require Plaintiff to be thwarted with the Headquarters Agreement would directly contravene public policy and result in detrimental harm to the United States, all the while OPEC continues in its price-fixing practices and market division via antitrust law violations. Flouting and disregarding U.S. antitrust law, OPEC continues its unlawful and economically damaging violations, while conveniently fending off all lawsuits brought against it by simply refusing to give consent to service of process.

As long as OPEC is permitted to continue withholding its consent to be served, OPEC will continue to enjoy absolute immunity, while leaving many to suffer from the consequences resulting from OPEC's illegal conduct, and depriving them of any meaningful remedies.

Essentially, the virtual impossibility of serving OPEC ultimately leaves no other viable recourse. As one judge aptly noted, "The notion of wholly insulating from service of process an entity such as OPEC- whose decisions surely affect the

9

daily lives of most Americans- is for many, a bitter pill to swallow." See XLV

Middle East Economic Survey 32 (12 August 2002).

### The Court's Involvement Is Necessary In This Matter, Given That Politicians Have Failed to Step-In

It is imperative that this Court become involved in this matter, given

Defendant's detrimental and unlawful conduct, politicians' failure and refusal to

take action to end the price fixing cartel, and the potential for others to follow

Defendant's lead since they too would be immune from liability.

### In Any Event, Service of Process Was Proper.

Rule 4(f)(3) of the Federal Rules of Civil Procedure ("FRCP") allows for

service on individuals outside of the United States to be accomplished by other

means not prohibited by federal law. The "Agreement Between The Republic of

Austria and OPEC" ("Headquarters Agreement") provides that "the service of

legal process…shall not take place within the headquarters seat except with the

express consent of, and under the conditions approved by, the Secretary General."

Notwithstanding the above, OPEC's claim that service of process was

improper is without merit. Rather, OPEC was properly served, consistent with due

process requirements, and had fully and timely notice of the pending action. Thus,

OPEC cannot logically contend that it lacked actual notice of the lawsuit while

OPEC continues to extensively participate in this litigation, including filing

numerous pleadings, motions, and other documents as well as responding to

10

Plaintiff's filings and motions. See *In re Ski Train Fire in Kaprun Austria on Nov. 11, 2001, 343* F.Supp.2d 208 (S.D.N.Y. 2004) (where the court denied dismissal even though copies of the summons and complaint were mailed to the Austrian corporations after efforts to serve defendant through letters rogatory were unsuccessful. In denying dismissal, the court held that, even though service of process did not satisfy the requirements of Austrian law, the defendant had actual knowledge of the litigation and was not prejudiced by non-delivery, since defendant knew about the lawsuit and participated in the litigation.

Moreover, unlike *Prewitt Enters., Inc. v. Organization of Petroleum Exporting Countries,*[2] 353 F.3d 916 (11th Cir. 2003) where service was improper because the method of service (registered mail) was specifically prohibited, Plaintiff, here, has made every reasonable effort and has exhausted all plausible means to ensure that OPEC was properly served and had actual and timely notice of the lawsuit. Specifically, Plaintiff made further efforts to ensure that OPEC was given notice of the pending litigation, including personal service on an agent on behalf of OPEC in addition to mailing the complaint. Moreover, the agent of OPEC accepted service on behalf of OPEC and its Secretary General without any

---

[2] While Defendant relies on this case, *Prewitt* is not a case from this circuit so it has no precedential weight vis-a-vis this court. However, in order to address OPEC's reliance on *Prewitt*, it is noteworthy that the *Prewitt* court emphasized, "we do not say that the district court never has discretion to direct service of process under Fed. R. Civ.P. 4(f)(3) that is in contravention of a foreign law."

objection. Thus, OPEC was properly served, accepted the service of documents, has fully participated in the litigation, and, as *In re Ski Train* waived its right to move to dismiss based on improper service.

Moreover, Plaintiff's method of service complied with constitutional due process requirements, giving actual notice to the Defendant and providing ample opportunity for Defendant to respond. As the U.S. Court of Appeals for the Ninth Circuit aptly confirmed in, *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1016, the "Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond."

## OPEC Had Actual Notice Of This Lawsuit.

The Third Circuit has noted that "rather than making a service on foreign instrumentalities a rigid, technical, or cumbersome procedure, Congress sought to facilitate the ability of private plaintiffs to serve foreign entities. In addition, Congress wished to insure that the sovereign owner would receive actual notice." *Velidor v. L/P/G Benghazi*, 653 F.2d 812 (3rd Cir. 1981). Thus, courts have allowed cases to proceed upon determining that defendants received actual notice. *Montanez-Miranda v. Banco Progreso Internacional De Puerto Rico*, 973 F. Supp. 89, 91 (D.P.R. 1997) citing *Sherer v. Construcciones Aeronauticas, S.A.*, 987 F.2d 1246 (6th Cir. 1993).

## Ineffective Service Of Process Would Deem The Sherman Antitrust Act Meaningless.

15 U.S.C. § 4 states in pertinent part, "The several district courts of the United States are invested with jurisdiction to prevent and restrain violation of sections 1 to 7 of this title [anti-trust act]; and it shall be the duty of the several United States attorneys, in their respective districts…to institute proceedings in equity to prevent and restrain such violations…" Moreover, it is well established that U.S. antitrust laws allow for extraterritorial application and provide for the right to exercise jurisdiction over foreign conduct that affects the United States.

Although there are numerous federal antitrust laws in the United States, the Sherman Act, 15 U.S.C. §§ 1–7, is perhaps one of the most significant.[3] "The Sherman Antitrust Act was designed to be a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade. It rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest qualify and the greatest material progress." *Northern Pacific Railway v. United States,* 356 U.S. 1,4 (1958).

The Headquarters Agreement and OPEC's unreasonable position clearly contravene the law and policy behind the Sherman Antitrust Act. Specifically,

---

[3] Larry Klayman, counsel for Freedom Watch, in an earlier period of his legal career, was a trial attorney for the Antitrust Division of the U.S. Department of Justice. He participated in the lawsuit that resulted in the breakup of AT&T under Section 2 of the Sherman Act, 15 U.S.C. § 2.

OPEC unreasonably contends that proper service can only be validly effectuated through obtaining consent from the Secretary General. OPEC further reasons that since the Secretary General's consent to serve OPEC was not obtained, OPEC is thus insulated from liability, despite knowingly and intentionally violating U.S. antitrust laws. Defendant's position, however, is misguided as it ignores the doctrine of equity, justice, fairness, and the importance of preserving free and unfettered trade. Clearly, to obtain the consent of the Secretary General to OPEC would undoubtedly be a daunting task, particularly to enjoin OPEN from continuing to violate antitrust laws.

    In fact, evidencing the impossibility of obtaining said consent, is the fact that the Secretary General refused to take any action with regard to a summons and complaint against OPEC, alleging antitrust violations, illegal price-fixing agreements on production and export of crude. In *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries,* the Court, in addressing the sufficiency of service of process to OPEC, recognized that the Secretary General had decided that the OPEC Secretariat would not take any action with regard to the summons and complaint to OPEC.

    Like *Prewitt*, Plaintiff brings this action to enjoin OPEC from continuing to violate U.S antitrust laws and its ongoing illegal price fixing. As in Prewitt, where the Secretary General deliberately failed to take action, thereby withholding

consent to serve OPEC, clearly the Secretary General is clearly doing the same here, thus, allowing OPEC to continue its economically damaging illegal conduct. The certainty of the Secretary General's inaction and the impossibility of obtaining consent is evidenced by the fact that Plaintiff personally served Defendants by delivering the summons and complaint in person to an Intake Officer for OPEC, acting as an agent for OPEC's security General. Yet, the Secretary General deliberately refused to take any action, and thereby denied consent to serve OPEC.

Although the court in *Prewitt* ultimately held that service of process had not been effectuated, Prewitt is distinguishable from this matter, including Plaintiff's methods of service, Plaintiff's numerous efforts to serve OPEC, and Plaintiff actually effectuating personal service on OPEC at its headquarters. In Prewitt, Prewitt only attempted service through mail, by requesting that the trial court send a copy of the complaint to OPEC, which it did. Unlike Prewitt, Plaintiff attempted service through numerous methods, including:

- Personally serving Defendant at its headquarter in Vienna, Austria;

- Directly delivering the documents in person to a direct agent for OPEC's Security General;

- Ensuring that Defendants were also served with a copy of the summons and Complaint via Australian mail; and

15

- After exhausting all of the above reasonable methods, Plaintiff additionally requested that the District Court authorize an alternate method of service, pursuant to the Court's broad discretion. However, the District Court denied Plaintiff's request, despite its clear discretion to liberally approve alternate methods of service.

- Unlike Prewitt, where *Prewitt* merely attempted service through mail, Plaintiff clearly exhausted all reasonable avenues of serving Defendant.

Thus, to ignore fundamental U.S. antitrust laws by giving antecedence to Austria's corrupt practices and laws would be clear miscarriage of justice. To flout our own nation's fundamental laws in favoritism of unjust Austrian polices would undermine our entire political system, particularly when considering the General Secretary's own clear disregard of its laws, practices, and international affairs by simply refusing to consent to service on OPEC, despite the significant international impact involved.

Thus, given To hold that the Headquarters Agreement is intended to nullify U.S. antitrust law, and that OPEC is immune from suit, would render the Sherman Antitrust Act and other U.S. laws meaningless, ineffective, and void. The perpetuation of this subterfuge would undoubtedly subject the United States to economic risk and harm, particularly as OPEC continues to engage in price-fixing and market division, fully aware that it simply has to refuse consent to service of

16

process. As such, it is crucial that the Court reverses the District Court's dismissal based on lack of service of process and holds OPEC accountable for its illegal conduct.

### The District Court Has Wide Discretion to Liberally Approve Alternate Methods of Service.

The District Court has discretion to liberally approve alternate methods of service. Specifically, under Rule 4(f)(3), "courts have authorized a wide variety of methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Rio Props. v. Rio Int'l Interlink,* 284 F.3d 1007 (9th Cir. Nev. 2002). In fact, the Constitution does not require any particular method of process, only that the method selected be reasonable calculated to provide notice and an opportunity to respond. *Id*. at 1017.

### A. *A Variety Of Alternative Methods Have Been Used For Service Of Process Under Rule 4(f)(3), Including Service Via Email And Fax.*

Courts have allowed a wide variety of methods for service of process. Email and fax have frequently been approved to effectuate service pursuant to Rule 4(f)(3), particularly when a plaintiff can prove that the email address or fax number is used by the defendant on whom service is sought. See *Liberty Media Holdings, LLC v. Vingay.com*, 2011 WL 810250 (D. Ariz. March 3, 2011) (approving email service); *Xcentric Ventures, LLC v. Karsen, Ltd.*, 2011 WL 3156966, at *2 (D.

Ariz. July 26, 2011) (granting email service pursuant to Rule 4(f)(3)); *U.S.*

*Commodity Futures Trading Com'n v. Aliaga*, 272 F.R.D. 617, 621 (S.D. Fla.

2011) (granting leave pursuant to Rule 4(f)(3) to serve the summons, complaint,

and all subsequent pleadings and discovery on the defendant located in Honduras);

*Philip Morris USA, Inc. v. Veles*, Ltd, 2007 WL 725412, at *2–3 (S.D.N.Y. Mar.

12, 2007) (authorizing service by email and facsimile pursuant to Rule 4(f)(3)).

B. ***Courts Have Authorized Service On An Attorney Representing A Party As A Valid Alternative Method for Service.***

Another common method of service pursuant to Rule 4(f)(3) is service on a

defendant's United States-based attorney, when there is evidence of an attorney-

client relationship. See *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 931

(N.D. Ill. 2009) (directing substituted service on U.S. attorneys retained by Russian

defendants); *Brookshire Bros., Ltd. v. Chiquita Brands*, Int'l, 2007 WL 1577771,

at *2 (S.D. Fla. May 31, 2007) (authorizing service on foreign defendants through

local counsel); *U.S. Commodity Futures Trading Com'n v. Aliaga*, 272 F.R.D. at

621 (S.D. Fla. 2011) (authorizing service on an attorney in the United States); *RSM*

*Prod. Corp. v. Fridman*, 2007 WL 2295907, at *6 (S.D.N.Y. Aug. 10, 2007)

(authorizing service on the defendant's U.S. counsel); *LG Elecs, Inc. v. Asko*

*Appliances, Inc.*, 2009 WL 1811098, at *4 (D. Del. June 23, 2009) (finding that,

pursuant to Rule 4(f)(3), service on an attorney was permissible in light of the

regularity of contact between the defendant and his attorney).

18

Through utilizing this method, OPEC has also been served through its attorneys, who are located in Washington, D.C. not Vienna, Austria and, thus, it is indisputable that effective service of process has occurred. Process of service on OPEC's attorneys were in addition to serving OPEC by mail and by personal serving the Summons and Complaint on an agent for OPEC's Security General, who clearly had the authority to accept the service and, in fact, did so. As such, service was validly effectuated and OPEC was, in fact, provided with actual notice of the lawsuit, clearly evidenced by OPEC's active participation in this litigation through a deluge of pleadings.

C. ***An Alternative Method Of Service Can Be Effectuated As Provided Under The Foreign Sovereign Immunities Act, 28 U.S.C. §1608.***

The Foreign Sovereign Immunities Act ("FSIA") contains specific provisions regarding service of process upon a foreign state or political subdivision of a foreign state. Specifically, the FSIA, 28 U.S.C. §1608(a) provides:

(a)    "Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(3) … by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be

> addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted."

OPEC is undoubtedly a political subdivision of a foreign state, particularly since OPEC is a permanent intergovernmental agency that coordinates and develops the petroleum policies of its member countries. Thus, the Court has discretion to authorize service of process on OPEC pursuant to the provisions provided in 28 U.S.C. §§1608(a)(3) and (a)(4), given OPEC's status as a political subdivision of a foreign state, and could have allowed Plaintiff to ensure service through this alternative avenue.

Moreover, if the court wishes, Plaintiff can also effectuate service of process upon Defendant in any of the other methods described above or by publishing notice of the summons and complaint on the internet. Although it is indisputable that service of process has been made, OPEC can still always be served using one method or another pursuant to the Court's wide discretion, to avoid Defendants using a subterfuge to avoid scrutiny under U.S. antitrust laws. OPEC thus seeks to elevate form over substance and its attempt to avoid service of process is futile.

## This Court Has Personal Jurisdiction.

In order to subject a defendant, who is not present within the forum, to a court's personal jurisdiction, due process only requires that the Defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend "traditional notices of fair play and substantial justice." *International Shoe v. Washington*, 326 U.S. 310, 66 S. Ct 154 (1945) citing *Milliken v. Meyer*, 311 U.S. 457, 463. OPEC has substantial contacts with the United States and, because of its contacts with the United States, OPEC's illegal conduct has had a devastating effect on the nation's economy and the financial well-being of U.S. Citizens.

Specifically, OPEC has been colluding with its member companies and the distributors and sellers of gasoline within the United States in order to fix the price of gasoline, as well as divide markets, within the United States.  In addition, Defendant conspires with distributers and retailers within the United States in order to artificially inflate the price of oil and gasoline by limiting production, hampering distribution, fixing prices, and dividing markets.  The oil and gasoline is widely distributed to refineries and retailers where it enters the stream of commerce within the United States. For example, nearly every vehicle in the United States runs on oil and gasoline, which, in fact, is supplied by Defendant.  This amounts to more than the requisite "minimum contacts" for personal jurisdiction and, in fact,

21

constitutes "substantial contacts" with the United States. Thus, Defendant clearly is subject to the Court's personal jurisdiction and, to argue otherwise, would actually offend "traditional notions of fair play and substantial justice."

Moreover, courts have held that an unincorporated association is subject to the U.S. antitrust laws and have further held that an unincorporated association "resides" in all those judicial districts in which it is doing business *California Clippers, Inc. v. United States Soccer Football Asso.*, 314 F. Supp. 1057 (N.D. Cal. 1970) See also *Rutland Railway Corp. v. Brotherhood of Locomotive Eng.*, 307 F.2d 21, 29 (2d Cir. 1962), cert. den., 372 U.S. 954, 9 L. Ed. 2d 978, 83 S. Ct. 949 (1963).

OPEC, an unincorporated association, is clearly subject to U.S. antitrust laws and is held to the jurisdiction of the United States as a result of its significant business activities in the jurisdiction. Moreover, OPEC "resides" in every judicial district in which it does business, which is throughout the United States.  OPEC has undoubtedly entered the stream of commerce in the United States through selling oil to refineries, who then distribute the oil to retailers across the entire country. Thus, Defendant has voluntarily chosen to sell its product throughout the United States by utilizing these refineries and distributors and since oil from Defendant finds its way into the District of Columbia, Defendant "resides" and does business within this judicial district.

22

Defendant contend it cannot be served since its headquarter is in Austria and thus, they should be afforded immunity for their blatant violations of U.S. law. Detestably, Defendant repeatedly asserts that it is entitled to such immunity, despite the fact that Defendant gained significant profits by selling oil in the United States, disregarded fundamental U.S. antitrust laws, engaged in illegal conduct in violation of U.S. antitrust laws, and employed illegal practices that significantly impacted the United States and its citizens both economically and financially. To provide immunity to the Defendant would be to render impotent U.S. antitrust laws and its extraterritorial jurisdiction to prevent price-fixing and market division. Thus, OPEC must be held accountable under U.S. law and foreign law cannot, and should not, shield it from liability before this Court.

### <u>Defendant's Other Claims Are Similarly Meritless.</u>

In addition to the claim that Defendant was not properly served, Defendant also laboriously argues various other defenses in an attempt to influence the court's decision. Yet Defendant's other legal defenses have been previously attempted and routinely rejected by U.S. courts.  As summarized by legal scholars Earl W. Kinter and Katherine Drew Hallgarten:

> Even where, as a practical matter, a foreign government approves and lends support to private activities in its country which affect the United States trade, such approval cannot convert an essentially private conspiracy into a system of governmental regulation shielded from antitrust liability by the doctrine of sovereign immunity.  In *United States v. Watchmakers of Switzerland Information Center, Inc.*,

the defense of sovereign immunity was urged unsuccessfully in such a situation. In that case, the United States alleged a conspiracy between several Swiss and American companies and trade associations, some of whom were named as defendants, some as co-conspirators only, to impose unreasonable trade restraint on the foreign and domestic trade and commerce of the United States in violation of section 1 of the Sherman Act and section 73 of the Wilson Tariff Act.

The conspirators were manufacturers and sellers of Swiss watches and watch parts, together with their trade associations. The basis of the complaint was a private agreement called the "Collective Convention," executed in Switzerland, by Swiss organizations. The Convention bound the Swiss signatories and their subsidiaries in the United States. It was intended to, and did, restrict unreasonably the manufacture of watches and watch parts in the United States, and restrain United States imports and exports of watches and watch parts for both manufacturing and repair purposes. Various other restrictive practices were charged. The Swiss government, indicating its approval of these private arrangements, passed legislation in aid of the Convention signatories. For example, any signatory who breached any of the Convention's provisions was, under Swiss law, subject to private sanctions provided in the Convention, and nonsignatories were subjected to certain price and other regulations.

Defendants claimed that the court should not assume jurisdiction over their activities because antitrust laws cannot be applied to acts of sovereign governments. They apparently based this defense on the fact that the agreements were entered into and became effective in Switzerland and were sanctioned by Swiss law. In rejecting defendants' claim of lack of jurisdiction, the court stated that the defendants' activities were not required by Swiss law. They were agreements formulated privately without compulsion on the part of the Swiss government. The court reasoned that although these agreements were "recognized as facts of economic and industrial life by the nation's government." that form of governmental action did not convert them into agreements required by that foreign country's law.
If, on the other hand, a foreign government actually compels a person to act as he does, and such act might otherwise violate U.S. antitrust laws, such compulsion is a complete defense to an antitrust case based on the act compelled. Furthermore, the "Act of State" doctrine

24

prevents the court from inquiring into the validity of the law of the foreign state under which the person acted.     This defense was successfully raised by defendants in *Ineramerican Refining Corp. v. Texaco Maracaibo, Inc.* Plaintiff Interamerican charged that it was unable to obtain Venezuelan  crude oil necessary for its refinery in New Jersey because of defendants suppliers' refusal to deal with it. Summary judgment was granted to the defendant suppliers, however, because the Venezuelan government had forbidden sales of its oil which would reach Interamerican, directly or indirectly.  By its ruling the court carried the "scant authority" of the dicta in *Continental Ore* and *Swiss Watchmakers*, as to when compulsion is a defense, one step farther, referring to the antitrust exception" in the case of acts of foreign sovereign in its own jurisdiction.  The court reasoned that sovereignty includes the right to regulate commerce within the nation and stated:

> When a nation compels a trade practice, firms there have no choice but to obey.  Acts of business become effectively acts of the sovereign.  The Sherman Act does not confer jurisdiction on the Untied States courts over acts of foreign sovereigns.  By its terms, it forbids anticompetitive practices of person and corporations.

The court denied plaintiff's request to conduct an inquiry into the validity of the Venezuelan laws.  For the court to rule on the validity of the foreign laws would be interference in a matter f foreign policy, a political question, outside the province of the court. Earl W. Kinter and Katherine Drew Hallgarten, *Application of United States Antitrust Laws to Foreign Trade and Commerce -- Variations on American Banana Since 1909*, 15 B.C.L. Rev. 343 (1973), http://lawdigitalcommons.bc.edu/bclr/vol15/iss2/4.

Thus, as discussed above, in the landmark case of *United States v.*

*Watchmakers of Switzerland Information Center, Inc.*, 1963 Trade Cas. (CCH)

P70,600, the court concluded that the collective watchmakers, in agreeing to and

engaging in a "combination and conspiracy to retrain unreasonably the foreign and

interstate trade and commerce of the United States" were not only under the

jurisdiction of the United States, but were also in clear violation of section 1 of the

Sherman Act and section 73 of the Wilson Tariff Act. *Id.* at 151,152. Rejecting all

other defenses, the court concluded "[t]he only question here is whether the acts of

the defendants have affected United States trade and commerce, and, if so, whether

they have restrained such trade and commerce.  It is obvious from the facts that

they have." *Id.* at 154. *Swiss Watchmakers* is clear and on point in this case

against OPEC.

This Court must similarly look to nothing but the alleged facts of the case to

determine whether OPEC is in violation of U.S. antitrust laws as Plaintiff alleges.

In order to do so, this case must respectfully be heard on its merits, just as it was in

*Swiss Watchmakers* and countless other antitrust lawsuits against foreign entities

like OPEC seeking to escape liability under the guise of government regulation.

Plaintiff also presents the following case authority in order to further demonstrate

that none of the defenses that Defendant suggested on its Motion to Dismiss are

actually applicable to this case.

## <u>State Action Doctrine Is Inapplicable To This Case.</u>

The State Action Doctrine, which Defendants mention in passing, is

inapplicable. Specifically, in 1990, the Supreme Court strictly limited the

application of the doctrine to cases where a court is required to determine the

26

legality of a sovereign state's official acts under that sovereign's own laws. *W. S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*, Int'l, 493 U.S. 400 (1990). The doctrine only applies when a suit requires a court to declare invalid a foreign governmental act performed within its territory and does not preclude inquiry into the motivations of a foreign government.

Moreover, "Courts in the United States have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them." In fact, federal courts have continually and repeatedly held that U.S. courts are empowered, by necessity, to hear cases against foreign entities in antitrust litigation. See *United States v. Aluminum Co. of America*, 148 F.2d 416 (2d Cir. 1945) (holding that the intent of Congress was to apply the antitrust laws to acts of aliens abroad).

Furthermore, In *United States v. Sisal Sales Corp*., 274 U.S. 268 (1927), the U.S. Court of Appeals for the Second Circuit made clear that parties engaged in a conspiracy to control exports of the natural resource, sisal, from Mexico to the U.S., could be sued under the antitrust laws, despite the fact that Mexico had approved and authorized key aspects of the allegedly illegal operation in legislation.

This principle was reaffirmed in *Hartford Fire Ins. v. California*, 509 U.S. 764 (1993), where the Supreme Court ruled that conspirators in the

United Kingdom seeking to control the price of insurance contracts in the United States could find no protection from the antitrust laws from the fact that the United Kingdom had by legislation authorized the types of arrangements they had made. This Supreme Court precedent mandates that OPEC can be sued in U.S. courts for violations of the nation's antitrust laws.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court reverse the lower court's dismissal of this action for lack of service of process and rule that OPEC was properly served. Defendant has been properly served and is actively involved in the litigation. Any other possible defenses are similarly meritless.

In the alternative, Plaintiff respectfully requests that the Court remand this case with instructions to the lower court to determine and devise the method for Plaintiff to effectuate service of process upon Defendant through an alternative method of service, to alleviate any uncertainty.

Additionally, this Court should rule that OPEC is not immune from U.S. antitrust laws so that this case may proceed. It is the duty of this Court to seek to enforce U. S. antitrust laws on Defendant, which is price-gauging American consumers on the price of oil. OPEC should not be allowed to thumb its nose to

American antitrust law.  OPEC must be held legally accountable.  It is not above the law.

      **Oral argument is respectfully requested.**

Dated:  July 15, 2013

                                  Respectfully Submitted,

                                    _/s/ Larry Klayman_

                                    Larry Klayman, Esq.
                                    D.C. Bar No. 334581
                                    FREEDOM WATCH, INC.
                                    2020 Pennsylvania Ave. NW, Suite 345
                                    Washington, DC 20006
                                    Tel: (310) 595-0800
                                    Email: leklayman@gmail.com

## <u>CERTIFICATE OF COMPLIANCE</u>

   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,050 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

       Respectfully submitted,

       /s/ *Larry Klayman*
       Larry Klayman, Esq.
       D.C. Bar No. 334581
       FREEDOM WATCH, INC.
       2020 Pennsylvania Ave. NW, Suite 345
       Washington, DC 20006
       Tel: (310) 595-0800
       Email: leklayman@gmail.com

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of July, 2013 a true and correct copy of the foregoing Brief Of Plaintiff-Appellant Freedom Watch, Inc. for Reversal Of The District Court's Order (No. 13- 7019) was filed electronically via CM/ECF to the United States Court of Appeal for the District of Columbia Circuit All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Respectfully submitted,


 /s/ *Larry Klayman*
Larry Klayman, Esq.
D.C. Bar No. 334581
FREEDOM WATCH, INC.
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

31