ORAL ARGUMENT NOT YET SCHEDULED

# 13-7019

# United States Court of Appeals
# For The District of Columbia Circuit

◆

FREEDOM WATCH, INC.,

*Plaintiff-Appellant,*

-v.-

ORGANIZATION OF THE PETROLEUM EXPORTING COUNTRIES,

*Defendant-Appellee.*

◆

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

◆

### BRIEF OF APPELLEE

| | |
|---|---|
| Carolyn B. Lamm | Robert A. Milne |
| Hansel T. Pham | Raj S. Gandesha |
| Anne D. Smith | Bryan D. Gant |
| Nicolle E. Kownacki | |
| **WHITE & CASE**LLP | **WHITE & CASE**LLP |
| 701 Thirteenth Street, NW | 1155 Avenue of the Americas |
| Washington, DC 20005 | New York, NY 10036 |
| (202) 626-3600 | (212) 819-8200 |
| clamm@whitecase.com | rmilne@whitecase.com |
| hpham@whitecase.com | rgandesha@whitecase.com |
| asmith@whitecase.com | bgant@whitecase.com |
| nkownacki@whitecase.com | |
| | *Attorneys for the Organization* |
| August 14, 2013 | *of the Petroleum Exporting Countries* |

<u>**CERTIFICATE OF COUNSEL**</u>

**I.      PARTIES AND *AMICI*; DISCLOSURE STATEMENT**

The following parties appeared in the district court and are parties in this Court:

Freedom Watch, Inc. appeared as the Plaintiff in the district court and is the Appellant in this appeal.

The Defendant in this action and Appellee in this appeal is the Organization of the Petroleum Exporting Countries ("OPEC"), a voluntary international organization comprised solely of foreign state members.  OPEC is not a corporation and has no parent company, and there is no publicly-held corporation owning a 10% or greater interest in OPEC.

OPEC appeared in the district court for the limited purpose of demonstrating lack of service of process and, as provided in the district court's August 7, 2012 Minute Order [JA___], to give notice of the additional defenses it intends to raise in this action.  OPEC reserves, and does not waive, all immunities, defenses and objections to which it or its Member States are entitled in this case.

No *amici curiae* appeared before the district court.  OPEC understands that the Federal Republic of Austria will request leave to appear before this Court as *amicus curiae*.

## II.    RULINGS UNDER REVIEW

The ruling under review is the district court's grant of OPEC's Motion to Dismiss for Lack of Service of Process, With Notice of Additional Defenses of Lack of Jurisdiction, Lack of Standing, and Failure to State a Claim ("Mot. to Dismiss").  The ruling is contained in the Memorandum Opinion and Order ("Mem. Op.") entered on January 15, 2013, by Judge Reggie B. Walton of the U.S. District Court for the District of Columbia [JA___].  *See Freedom Watch, Inc. v. Organization of Petroleum Exporting Countries*, 288 F.R.D. 230 (D.D.C. 2013).

## III.    RELATED CASES

The case on review has not previously been before this Court or any other court.  Similar cases from other courts include *Freedom Watch, Inc. v. OPEC*, No. 08-cv-21630 (S.D. Fla. Dec. 22, 2008); *Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916 (11th Cir. 2003); and *Int'l Ass'n of Machinists & Aerospace Workers v. OPEC*, 477 F. Supp. 553 (C.D. Cal. 1979), *aff'd* 649 F.2d 1354 (9th Cir. 1981).

Respectfully submitted on August 14, 2013:


/s/ Carolyn B. Lamm

Carolyn B. Lamm (D.C. Circuit Bar No. 221325)     Robert A. Milne
Hansel T. Pham (D.C. Circuit Bar No. 54683)       Raj S. Gandesha
Anne D. Smith (D.C. Circuit Bar No. 34723)        Bryan D. Gant
Nicolle E. Kownacki

White & Case LLP                                  White & Case LLP
701 Thirteenth Street, NW                         1155 Avenue of the Americas
Washington, DC 20005                              New York, NY 10036
(202) 626-3600                                    (212) 819-8200
clamm@whitecase.com                               rmilne@whitecase.com
hpham@whitecase.com                               rgandesha@whitecase.com
asmith@whitecase.com                              bgant@whitecase.com
nkownacki@whitecase.com

*Attorneys for the Organization*
*of the Petroleum Exporting Countries*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee OPEC respectfully requests that Appellant Freedom Watch's request for oral argument be denied.   Pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure, OPEC does not believe oral argument would significantly aid the Court in deciding the issues in this appeal, as the issues in this case relating to the validity of service of process are discrete and straightforward.  *See United States v. Baber*, 447 F.2d 1267, 1268 (D.C. Cir. 1971) (noting that this Court will decline to hear oral argument where "Appellant's points are relatively clear-cut and the answers equally so").  Nor does this case raise any novel issues of law.  Like the district court, at least three other courts also have dismissed complaints against OPEC for lack of service of process in virtually identical circumstances.  *See, e.g.*, *Freedom Watch, Inc. v. OPEC*, No. 08-cv-21630 (S.D. Fla. Dec. 22, 2008); *Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916 (11th Cir. 2003); *Int'l Ass'n of Machinists & Aerospace Workers v. OPEC*, 477 F. Supp. 553 (C.D. Cal. 1979), *aff'd* 649 F.2d 1354 (9th Cir. 1981).

Should the Court decide to schedule oral argument, OPEC reserves its right to participate fully in oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF COUNSEL ...................................................................i

    I.      PARTIES AND *AMICI*; DISCLOSURE STATEMENT ......................i

    II.     RULINGS UNDER REVIEW ............................................. ii

    III.   RELATED CASES ............................................................ ii

STATEMENT REGARDING ORAL ARGUMENT .............................................iv

TABLE OF AUTHORITIES .................................................................. vii

GLOSSARY.................................................................................... xii

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUES...............................................................2

STATEMENT OF THE CASE...................................................................3

SUMMARY OF ARGUMENT ..............................................................10

STANDARD OF REVIEW .....................................................................14

ARGUMENT ....................................................................................15

    I.      The District Court Did Not Err In Ruling that Service of
          Process on OPEC Was Prohibited by the Federal Rules of
          Civil Procedure...................................................................15

          A.    There Is No Dispute that Service of Process on
                OPEC in this Case is Governed by Rule 4(f),
                Which Incorporates Austrian Law ............................................16

          B.    Freedom Watch's Attempted Service of Process on
                OPEC Is Prohibited under Austrian Law and
                Therefore also Improper under Rule 4(f)..................................18

          C.    It Was Appropriate for the District Court to Follow
                the Reasoning of the Eleventh Circuit's Decision
                in *Prewitt*...................................................................22

D.      The District Court Did Not "Provide OPEC with
        Immunity for Violating U.S. Law" ...........................................24

E.      Actual Notice Alone Is Insufficient to Achieve
        Effective Service of Process .....................................................26

F.      Dismissal of this Lawsuit for Insufficient Service
        of Process Does Not Violate the Sherman Act or
        U.S. Public Policy ....................................................................29

II.     The District Court Did Not Abuse Its Discretion in
        Declining to Authorize Alternative Methods of Service ...................30

A.      Ordering Alternative Methods of Service in this
        Case Would Violate and Cause Serious Offense to
        Austrian Law ............................................................................31

B.      OPEC Has Not Been and Cannot Be Served
        Through Its U.S. Counsel ..........................................................35

III.    Freedom Watch's Other Arguments Are Not Properly
        Before This Court ..............................................................................37

A.      Freedom Watch's Newly Raised Argument
        Regarding Service of Process under the Foreign
        Sovereign Immunities Act Is Procedurally
        Improper and Contrary to Precedent .........................................37

B.      Freedom Watch's Remaining Arguments Address
        Issues That Are Not Before This Court .....................................39

CONCLUSION ..........................................................................................41

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................42

CERTIFICATE OF SERVICE ..................................................................43

ADDENDUM OF STATUTES AND REGULATIONS ........................44

# TABLE OF AUTHORITIES

## FEDERAL CASES                                               Page(s)

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................6

*Baade v. Price*,
  175 F.R.D. 403 (D.D.C. 1997) ........................................................27

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................6

*BPA Int'l, Inc. v. Kingdom of Sweden*,
  281 F. Supp. 2d 73 (D.D.C. 2003) ..................................................27

*Chen v. Dist. of Columbia*,
  256 F.R.D. 263 (D.D.C. 2009) ........................................................28

*Doe v. DiGenova*,
  779 F.2d 74 (D.C. Cir. 1985) ..........................................................40

*FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson*,
  636 F.2d 1300 (D.C. Cir. 1980) ................................................30, 32

*Freedom Watch, Inc. v. Organization of Petroleum Exporting Countries*,
  288 F.R.D. 230 (D.D.C. 2013) .......................................................... ii

*Freedom Watch, Inc. v. OPEC*,
  No. 08-cv-21630 (S.D. Fla. Dec. 22, 2008)................................. ii, iv

*Gorman v. Ameritrade Holding Corp.*,
  293 F.3d 506 (D.C. Cir. 2002) ..................................................14, 25

*Int'l Assoc. of Machinists and Aerospace Workers v. OPEC*,
  477 F. Supp. 553 (C.D. Cal. 1979) ......................................... ii, iv, 38

*Kadic v. Karadzic*,
  70 F.3d 232 (2d Cir. 1995) ..............................................................22

*Klein v. United States*,
  278 F.R.D. 94 (W.D.N.Y. 2011) .....................................................32

Page(s)

*Klinghoffer v. S.N.C. Anchille Lauro Ed Altri-Gestione*
   *Motonave Achille Lauro in Amministrazione Straordinaria*,
   937 F.2d 44 (2d Cir. 1991) .................................................................22

*LG Elecs., Inc. v. Asko Appliances, Inc.*,
   No. 08-828 (JAP), 2009 WL 1811098
   (D. Del. June 23, 2009) ...................................................................37

*Liberty Media Holdings, LLC v. Vingay.com*,
   No. CV-11-0280-PHX-LOA, 2011 WL 810250
   (D. Ariz. Mar. 3, 2011) ...................................................................35

*Light v. Wolf*,
   816 F.2d 746 (D.C. Cir. 1987) .........................................................15

*Mann v. Castiel*,
   729 F. Supp. 2d 191 (D.D.C. 2010) .................................................27

*Mann v. Castiel*,
   681 F.3d 368 (D.C. Cir. 2012) .........................................................21

*Montanez Miranda v. Banco Progreso, S.A.C.A.*,
   973 F. Supp. 89 (D.P.R. 1997) ........................................................29

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
   526 U.S. 344 (1999) .........................................................................27

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
   484 U.S. 97 (1987) ...........................................................................27

*Prewitt Enters., Inc. v. OPEC*,
   224 F.R.D. 497 (N.D. Ala. 2002) ..........................................23, 29, 30

* *Prewitt Enters., Inc. v. OPEC*,
   353 F.3d 916 (11th Cir. 2003) .......................ii, iv, 8, 9, 10, 11, 12, 13,
   .................................................................. 14, 16, 22, 23, 24, 25, 26,
   .................................................................. 27, 28, 31, 33, 34, 35, 38

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) .............................................14, 34, 35

Page(s)

*Sampaio v. Inter-Amer. Dev. Bank*,
  468 F. App'x 10 (D.C. Cir. 2012) ......................................................38

*Schwarz v. Thomas*,
  222 F.2d 305 (D.C. Cir. 1955) ..........................................................36

*Sherer v. Construcciones Aeronauticas, S.A.*,
  987 F.2d 1246 (6th Cir. 1993) ..........................................................29

*Singleton v. Wulff*,
  428 U.S. 106 (1976) ..........................................................................40

*Ski Train Fire in Kaprun, Austria on November 11, 2000, In re*,
  No. MDL 1428 SAS, 2003 WL 21659368
  (S.D.N.Y. July 15, 2003) ..................................................................28

*Ski Train Fire in Kaprun, Austria on November 11, 2000, In re*,
  343 F. Supp. 2d 208 (S.D.N.Y. 2004) ..............................................28

*Steele v. Schafer*,
  535 F.3d 689 (D.C. Cir. 2008) ..........................................................40

*Tachiona v. United States*,
  386 F.3d 205 (2d Cir. 2004) ..............................................................22

*United States v. Baber*,
  447 F.2d 1267 (D.C. Cir. 1971) ........................................................iv

*United States v. Stover*,
  329 F.3d 859 (D.C. Cir. 2003) ..........................................................38

*Velidor v. L/P/G/ Benghazi*,
  653 F.2d 812 (3d Cir. 1981) ..............................................................29

*Whitehead v. CBS/Viacom, Inc.*,
  221 F.R.D. 1 (D.D.C. 2004) ..............................................................27

* *WICA, Inc. v. WWSW, Inc.*,
  191 F.2d 502 (D.C. Cir. 1951) ..........................................................36

*Williams v. GEICO Corp.*,
  792 F. Supp. 2d 58 (D.D.C. 2011) ....................................................36

Page(s)

*Xcentric Ventures, LLC v. Karsen, Ltd.*,
 No. CV 11-1055-PHX-FJM, 2011 WL 3156966
 (D. Ariz. July 26, 2011) .......................................................................35

*Youngbey v. March*,
 676 F.3d 1114 (D.C. Cir. 2012) .........................................................24

## STATUTES AND RULES

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1603(a) ..............................................................................38

28 U.S.C. § 1603(b) ..............................................................................38

28 U.S.C. § 1608(a) ...................................................................31, 37, 38

Fed. R. Civ. P. 4 ...................................................... 11, 13, 14, 15, 27, 29

Fed. R. Civ. P. 4(f) ...................................... 9, 10, 11, 12, 16, 18, 22, 25

Fed. R. Civ. P. 4(f)(1) ...................................................................11, 17,

Fed. R. Civ. P. 4(f)(2) ............................................9, 11, 16, 17, 20, 23

Fed. R. Civ. P. 4(f)(3) ............................................ 12, 13, 17, 23, 31, 33

Fed. R. Civ. P. 4(h) ..............................................................................27

Fed. R. Civ. P. 4(h)(2) ...........................................8, 9, 11, 12, 16, 38

Fed. R. Civ. P. 12 ...................................................................6, 10, 13

Fed. R. Civ. P. 12(b)(1) .........................................................................6

Fed. R. Civ. P. 12(b)(5) .............................................................5, 8, 27, 28

Fed. R. Civ. P. 12(b)(6) .........................................................................6

Fed. R. Civ. P. 44.1 .............................................................................20

D.C. Cir. Rule 28(a)(5) ..........................................................................1

Page(s)

COURT DOCUMENTS

Order Denying Motion for Reconsideration,
  *Freedom Watch, Inc. v. OPEC*,
  No. 08-cv-21630 (S.D. Fla. Feb. 26, 2009) ......................................................23

OTHER AUTHORITIES

1993 Advisory Committee Note to Federal Rule of Civil
  Procedure 4(f) ................................................................................................31, 32

Agreement between the Republic of Austria and the
  Organization of the Petroleum Exporting Countries
  Regarding the Headquarters of the Organization of the
  Petroleum Exporting Countries, Aus.-OPEC, Feb. 18, 1974,
  2098 U.N.T.S. 415 ..........................................................................5, 19, 20, 28

Agreement between the United Nations and the United States of
  America regarding the Headquarters of the United Nations,
  June 26, 1947, 61 Stat. 3416 .......................................................................21, 22

Hague Convention on Civil Procedure,
  *opened for signature* Mar. 1, 1954,
  286 U.N.T.S. 265 ...........................................................................................17

Hague Convention on the Service Abroad of Judicial and
  Extrajudicial Documents in Civil or Commercial Matters,
  *opened for signature* Nov. 15, 1965,
  20 U.S.T. 361, 658 U.N.T.S. 163 ...................................................................17

Headquarters Agreement between the Organization of
  American States and the Government of the
  United States of America, May 14, 1992,
  S. Treaty Doc. No. 102-40 ..............................................................................21

*Authorities upon which Appellee chiefly relies are marked with asterisks.*

# **GLOSSARY**

In accordance with D.C. Circuit Rule 28(a)(3), the abbreviations and acronyms used herein are defined as follows:

| | |
|---|---|
| Austrian Federal Ministry | Austrian Federal Ministry for European and International Affairs |
| Compl. | Complaint dated May 7, 2012 |
| El-Badri Decl. | Declaration of Abdalla Salem El-Badri |
| El-Badri Supp. Decl. | Supplemental Declaration of Abdallah Salem El-Badri |
| FSIA | Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602-11 |
| FW Br. | Brief of Plaintiff-Appellant Freedom Watch, Inc. for Reversal of the District Court's Order and Request for Oral Argument |
| FW Opp. | Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss for Lack of Service of Process |
| Hahnkamper Decl. | Declaration of Wolfgang Hahnkamper |
| June 21, 2012 Note Verbale | Note Verbale No. BMeiA-02.8.19.19/0001-I.2/2012 from the Austrian Federal Ministry for European and International Affairs dated June 21, 2012 (El-Badri Decl. Exh. 7) |
| Luger Decl. | Declaration of Friedrich Luger |
| Mot. to Dismiss | Defendant's Motion to Dismiss for Lack of Service of Process, With Notice of Additional Defenses of Lack of Jurisdiction, Lack of Standing, and Failure to State a Claim |

| | |
|---|---|
| OPEC | Organization of the Petroleum Exporting Countries |
| OPEC Headquarters Agreement | Agreement between the Republic of Austria and the Organization of the Petroleum Exporting Countries Regarding the Headquarters of the Organization of the Petroleum Exporting Countries, Aus.-OPEC, Feb. 18, 1974, 2098 U.N.T.S. 415 |
| Schwebel Op. | Opinion of Judge Stephen M. Schwebel |

## **JURISDICTIONAL STATEMENT**

This Court has appellate jurisdiction under 28 U.S.C. § 1291.[1]  Freedom Watch timely appealed from a final Order dated January 15, 2013 of the district court disposing of all of Freedom Watch's claims due to lack of service of process. *See* Mem. Op. at 6.

---

[1]  In accordance with D.C. Circuit Rule 28(a)(5), all pertinent statutes and regulations are set forth in an addendum to this brief.

## <u>STATEMENT OF THE ISSUES</u>

(1) Whether the district court erred as a matter of law in finding that Freedom Watch failed to serve process on OPEC; and

(2) Whether the district court abused its discretion in failing to authorize an alternative method of service of process on OPEC.

## STATEMENT OF THE CASE

### *The Complaint*

Freedom Watch filed a complaint ("Compl.") against OPEC on May 7, 2012 alleging that OPEC, its member nations, unspecified private oil companies and others are engaged in a conspiracy to fix the price of petroleum and petroleum related products in violation of U.S. antitrust laws. The only specific acts attributed to OPEC in the complaint comprise analyses of oil markets, preparation of a long-term strategy, organization of meetings and provision of speakers at OPEC conferences. Compl. ¶¶ 6-9, 19-21 [JA___]. The complaint seeks relief against OPEC (in the form of a declaratory judgment that OPEC's conduct violates U.S. antitrust laws) and against OPEC's member nations (in the form of an order enjoining OPEC and its member nations from the alleged continuing violations of U.S. antitrust laws). Compl. at 11-12 [JA___].

### *The Parties*

Freedom Watch described itself in the complaint as "an organization which seeks to promote and protect freedom in the United States and throughout the world." Compl. ¶ 1 [JA___]. The complaint alleges that Freedom Watch does business in the District of Columbia and purchases gasoline and other petroleum products "sold by . . . OPEC." Compl. ¶ 14 [JA___].

OPEC is a voluntary international organization whose members are foreign sovereign states. *See* Declaration of Abdalla Salem El-Badri ("El-Badri Decl.") ¶ 3 [JA___]. OPEC's current members are Algeria, Angola, Ecuador, Iran, Iraq, Kuwait, Libya, Nigeria, Qatar, Saudi Arabia, the United Arab Emirates and Venezuela (the "Member Countries"). Opinion of Stephen M. Schwebel ("Schwebel Op.") ¶¶ 5-6 [JA___]. OPEC is not organized as a corporation or business organization. Its organization and operations are governed by the OPEC Statute. The OPEC Statute provides that the supreme authority of OPEC is the OPEC Conference, a body that comprises only government delegations from Member Countries headed by the Petroleum Minister or a similarly high-level government official. El-Badri Decl. ¶ 9 [JA___]; OPEC Statute (El-Badri Decl. Exh. 2) [JA___].

OPEC does not own, produce, manufacture, refine, sell or hold title to any petroleum products. El-Badri Decl. ¶ 6 [JA___]. OPEC serves only as a forum for its Member Countries to meet and discuss their petroleum policies in accordance with their individual sovereign interests. *Id.*

OPEC is guided by the principle of sovereign equality, and adoption or compliance with any decision reached at OPEC is voluntary. OPEC has no authority to control or override decisions of Member Countries, no enforcement

authority, and no power to penalize any Member Country for non-compliance.  El-Badri Decl. ¶¶ 8, 11-12 [JA___].

OPEC's headquarters have been located in Vienna, Austria since 1974. OPEC's relationship with the Austrian Government is governed by the Agreement between the Republic of Austria and the Organization of the Petroleum Exporting Countries Regarding the Headquarters of the Organization of the Petroleum Exporting Countries ("OPEC Headquarters Agreement"), Aus.-OPEC, Feb. 18, 1974, 2098 U.N.T.S. 415 (El-Badri Decl. Exh. 3) [JA___]; *see also* El-Badri Decl. ¶ 13 [JA___].  Article 5(2) of the OPEC Headquarters Agreement states:  "The service of legal process, including the seizure of private property, shall not take place within the headquarters seat except with the express consent of, and under conditions approved by, the Secretary General."  OPEC Headquarters Agreement (El-Badri Decl. Exh. 3) art. 5(2) [JA___].

### *The Proceedings Below*

The district court initially granted OPEC an extension of time to respond to the complaint and later granted OPEC's motion to set a bifurcated briefing schedule.  That schedule required OPEC (1) to file its motion to dismiss the complaint for insufficient service of process under Fed. R. Civ. P. 12(b)(5) by August 21, 2012; and (2) to give notice in that motion of all other Rule 12 defenses OPEC intended to raise if the district court denied OPEC's motion to dismiss for

lack of service of process. Minute Order dated August 7, 2012 [JA___]. The order

reserved briefing on the merits of the additional defenses to a later date to be set by

the district court if it denied OPEC's motion to dismiss. *Id.*

OPEC filed its motion to dismiss for lack of service of process on

August 21, 2012.[2] As directed, OPEC gave notice of the following additional

grounds for dismissal of the complaint under Fed. R. Civ. P 12(b)(1) and 12(b)(6):

(1) the court lacked subject matter jurisdiction because Freedom Watch's claims

present a non-justiciable political question; (2) relief cannot be granted because

Freedom Watch's claims required the court to sit in judgment on the validity of

sovereign crude oil production decisions taken by OPEC Member Countries, which

is barred by the act of state doctrine; (3) the complaint fails to satisfy the pleading

standard established by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); (4) Freedom Watch

lacks antitrust standing; and (5) the court lacked personal jurisdiction over OPEC.

*See* Mot. to Dismiss at 1-2 [JA___].

On October 11, 2012, Freedom Watch filed its opposition to OPEC's motion

to dismiss ("FW Opp.") [JA___] and filed a Proof of Service (dated May 30, 2012)

[JA___]. The Proof of Service states that Freedom Watch on May 14, 2012 caused

---

[2] OPEC appeared for the limited purpose of objecting to service of process and to give notice of its additional Fed. R. Civ. P. 12 defenses. *See* Mot. to Dismiss at 1 [JA___].

the delivery of the summons and complaint to "Frederick Luger, who is designated by law to accept service of process on behalf of" OPEC.  Proof of Service dated May 30, 2012, FW Opp. Exh. 1 [JA___].  It further states that "Mr. Luger accepted service of the Complaint as intake officer of OPEC on behalf of OPEC's Secretary General and OPEC."  *Id*.

OPEC's reply, filed November 5, 2012, included an affidavit by Friedrich Luger, the individual described in the Proof of Service.  The affidavit demonstrates that Mr. Luger is not an employee of OPEC much less an "intake officer" authorized to accept service of process.   Declaration of Friedrich Luger ("Luger Decl.") ¶ 1 [JA___].  Rather, Mr. Luger has been an Austrian police officer since 1978, and is a senior police inspector serving as a plain-clothes police officer in the Provincial Department for State Protection.  *Id*.

On May 14, 2012, Mr. Luger was performing security services at OPEC headquarters and was at OPEC's reception desk when the designated security person for OPEC was temporarily absent.  *Id*. ¶ 2 [JA___].  Two individuals approached him and handed him an envelope without identifying themselves, explaining the contents of the envelope, or asking him any questions regarding his job functions.  *Id*.  Mr. Luger provided his name when asked, but never stated that he was an employee of OPEC or that he had any authority to receive service of process or act on behalf of OPEC's Secretary General.  *Id*.

Additional evidence demonstrates that (1) Mr. Luger is not an employee of OPEC, *see* Supplemental Declaration of Abdalla Salem El-Badri ("El-Badri Supp. Decl.") ¶ 2 [JA___]; (2) OPEC never authorized Mr. Luger to act on behalf of OPEC or on behalf of OPEC's Secretary General, *see id.*; (3) OPEC's Secretary General has not consented to service of process on OPEC, *see* El-Badri Decl. ¶ 15 [JA___]; and (4) Mr. Luger is not an agent of OPEC under Austrian law.  *See* Supplemental Declaration of Wolfgang Hahnkamper ¶ 9 [JA___].

### *The District Court's Memorandum Opinion*

On January 15, 2013, the district court issued a memorandum opinion finding that Freedom Watch failed to carry its burden of establishing that it validly served process on OPEC.  Accordingly, the court dismissed Freedom Watch's complaint pursuant to Rule 12(b)(5) for insufficient service of process.  Mem. Op. at 6 [JA___].

The district court held that Freedom Watch did not dispute that OPEC was an unincorporated association headquartered outside of the United States and that service on OPEC therefore is governed by Fed. R. Civ. P. 4(h)(2).  Mem. Op. at 3 [JA___].  The district court also observed that the Eleventh Circuit had reached the identical conclusion that Rule 4(h)(2) governs service on OPEC in *Prewitt Enters., Inc., v. OPEC*, 353 F.3d 916, 921 n.6 (11th Cir. 2003).  *Id.*

The Court then explained that Rule 4(h)(2) adopted by incorporation all of the methods of service set out in Fed. R. Civ. P. 4(f), *except* personal delivery. *Id*. at 2 [JA___].  Therefore Freedom Watch had the burden of showing that it effectuated service upon OPEC "'in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).'" *Id*. at 3 [JA___] (quoting Fed. R. Civ. P. 4(h)(2)).

The district court then examined Freedom Watch's claims that it had served OPEC (1) by personal delivery to an agent of OPEC and (2) by sending the complaint to OPEC via Austrian mail.  Mem. Op. at 3 [JA___].  In doing so, the court expressly relied upon the Eleventh Circuit's decision in *Prewitt*, which also addressed whether there had been valid service of process on OPEC (in that case by registered mail).  In *Prewitt*, the Eleventh Circuit concluded that service on OPEC without its consent was ineffective under Rule 4 because (1) no other means of service had been provided by federal law; (2) there was no internationally agreed means of service available; and (3) service of process on OPEC by registered mail was prohibited by Austrian law.  Mem. Op. at 4 [JA___] (citing *Prewitt*'s discussion of applicable methods of service under Fed. R. Civ. P. 4(f)).  The district court reached the same conclusion in this case because OPEC has not filed a waiver, and Freedom Watch has not shown that federal law provides an

alternative means of service or that there are internationally agreed means for service consistent with Rule 4(f). *Id.* at 4 [JA___].

The district court also relied upon the unchallenged evidence of Austrian law submitted by OPEC, which demonstrates that Austrian law specifically prohibits (1) direct service from abroad by private parties; (2) service of process on an international organization without the involvement of the Austrian Federal Ministry; and (3) any service of process on OPEC without the express consent of the Secretary General of OPEC. Mem. Op. at 4 & n.2 [JA___]. In accordance with the reasoning of *Prewitt* and the contemporaneous evidence of Austrian law submitted by OPEC, the district court concluded that Freedom Watch failed to perfect service on OPEC in accordance with Rule 4(f), and granted OPEC's motion to dismiss for insufficient service of process. Mem. Op. at 4, 6 [JA___].

The district court's dismissal on service of process grounds precluded the need for briefing on the five additional Rule 12 grounds for dismissal that OPEC had noted in its motion to dismiss in accordance with the bifurcated scheduling order. None of those grounds are before this Court in this appeal of the district court's dismissal of the complaint for insufficient service of process.

## SUMMARY OF ARGUMENT

The lower court properly dismissed the complaint after concluding that (1) Freedom Watch's attempted service of process on OPEC in Vienna, Austria by

personal delivery and by Austrian mail failed to comply with the requirements of Fed. R. Civ. P. 4, and (2) none of Freedom Watch's arguments that its service should be found to be effective despite its failure to comply with Rule 4 could be accepted.

Following directly relevant Eleventh Circuit precedent addressing an earlier attempt to service process on OPEC, *Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916, 921 (11th Cir. 2003), the district court applied the relevant provisions of Rule 4 to this case. The court concluded that that Rule 4(h)(2) governs service on OPEC (a point Freedom Watch does not dispute) and further that none of the available methods of service authorized by that rule (i.e., the methods provided in Rule 4(f) for service on an individual, other than personal delivery) could be applied in this case. Where Rule 4(f) required reference to the foreign law of the country of service, the district court relied on evidence of Austrian law submitted by OPEC and unchallenged by Freedom Watch.

In this manner, the district court concluded that there was no internationally agreed means of service (Rule 4(f)(1)), and that the methods of service in Rule 4(f)(2) were ineffective because they were contrary to Austrian law. The unchallenged evidence shows that Austrian law prohibits (1) direct service of process from abroad by private parties; (2) service on an international organization without the involvement of the Austrian Foreign Ministry; and (3) any service of

process on OPEC in its headquarters seat without the express consent of OPEC's Secretary General. Therefore the court concluded that OPEC had failed to perfect service of process on OPEC in accordance with Rule 4(f), citing the *Prewitt* case, which reached the same conclusion in virtually identical circumstances.

The lower court also relied on the *Prewitt* precedent to address Freedom Watch's attempt to evade the failure of attempted service. The court (1) found that actual notice alone is not a sufficient basis on which to find effective service of process on OPEC and (2) adopted *Prewitt*'s conclusion that any method of alternative service of process under Rule 4(f)(3) would be a direct affront to Austrian law and sovereignty, and therefore a court would not abuse its discretion in declining to direct alternative service. Finally, the court denied Freedom Watch's claim to have served OPEC through its U.S. counsel, because there was no evidence that Freedom Watch had served formal process on counsel, while there was evidence that counsel were not authorized by OPEC to accept service of process.

On appeal, Freedom Watch does not challenge the application of Rules 4(h)(2) and 4(f) to its attempted service on OPEC, the evidence of the content and application of Austrian law on which the district court relied, or the district court's conclusion that Freedom Watch's attempted service of process violated Austrian law. It therefore follows that there is no basis for Freedom Watch to challenge the

finding that its attempted service of process on OPEC is invalid and ineffective under Rule 4.

Rather, Freedom Watch focuses its appeal on the contentions that (1) the district court erred by declining to find its attempted service effective despite the prohibitions of Austrian law and (2) alternative service could be directed under Rule 4(f)(3) even where it violated Austrian law. Freedom Watch attacks the district court's adoption of the reasoning in *Prewitt* because Eleventh Circuit precedent is not binding in this Circuit, and it claims that the district court decision purportedly elevated "corrupt" Austrian law over U.S. law. Freedom Watch offers questionable, unsupported arguments that the district court's decision violates public policy, and repeats the arguments made below regarding service on U.S. counsel and alternative service without addressing the district court's bases for rejecting them. It concludes by raising on appeal an argument that it failed to present below and by addressing additional Rule 12 defenses that the district court expressly reserved for a later phase, if any, of the case, and which therefore are not properly before this Court.

Freedom Watch's arguments on appeal provide no basis for overturning the district court's carefully reasoned opinion, including that court's reliance on the directly relevant Eleventh Circuit precedent in the *Prewitt* case. The *Prewitt* court addressed directly analogous circumstances involving service of process on OPEC

by registered mail and requests for alternative service, which required consideration of Austrian law and the application of the same provisions of Rule 4 that are at issue in this case. *Prewitt* provides authoritative and careful reasoning that the district court properly found persuasive in the circumstances of this case. Freedom Watch offers no credible reason why the analysis or result in *Prewitt* should not apply in this case, which disposes of all of its claims except its argument that it effected service on OPEC through U.S. counsel. As to that argument, Freedom Watch has failed even to address the facts and law applied by the district court, much less to show that its conclusion was in error.

The district court's dismissal of the Freedom Watch complaint should be affirmed.

## STANDARD OF REVIEW

The district court's ruling that Freedom Watch's attempt to serve process on OPEC was invalid under the Federal Rules of Civil Procedure is subject to *de novo* review. *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509, 514-15 (D.C. Cir. 2002). The district court's refusal to authorize alternative means of service of process is reviewed for abuse of discretion. *See, e.g.*, *Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916, 921 (11th Cir. 2003); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).

# ARGUMENT

## I. THE DISTRICT COURT DID NOT ERR IN RULING THAT SERVICE OF PROCESS ON OPEC WAS PROHIBITED BY THE FEDERAL RULES OF CIVIL PROCEDURE

The district court appropriately dismissed the complaint after finding that Freedom Watch's attempted service of process on OPEC did not satisfy "the requirements of the relevant portions of Rule 4 and any other applicable provision of law."  Mem. Op. at 2-3 [JA___] (citing *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987)).

On appeal, Freedom Watch maintains that OPEC was "properly served, consistent with due process requirements, and had full[] and timely notice of the pending action."  *See* Brief of Plaintiff-Appellant Freedom Watch, Inc. for Reversal of the District Court's Order and Request for Oral Argument ("FW Br."), at 10.  Freedom Watch argues that the district court's dismissal of this case "based on improper service . . . violates U.S. law, international laws, and public policy," and it complains that "the Court's reasoning that service was improper effectively insulated [OPEC] from any liability."  FW Br. at 8.  Freedom Watch's arguments ignore the text of Rule 4, the undisputed evidence of Austrian law, and the sound reasoning of the district court and the two other federal courts that have ruled on the same issue.

As discussed below, the Federal Rules and Austrian law compel the conclusion that OPEC cannot be served in this case, and Freedom Watch's arguments on appeal, including its renewed attempts to distinguish *Prewitt*, do not disturb this conclusion.

### A.    There Is No Dispute that Service of Process on OPEC in this Case is Governed by Rule 4(f), Which Incorporates Austrian Law

As the district court found, there is no dispute that Federal Rule of Civil Procedure 4(h)(2), which governs service on an unincorporated association, applies in this case.  Mem. Op. at 3 [JA___] (noting that OPEC argued, and Freedom Watch accepted, that OPEC was an unincorporated association headquartered outside of the United States for purposes of service of process); *see also* Mot. to Dismiss at 8 [JA___]; FW Opp. at 3-5 [JA___].  Rule 4(h)(2) provides that service on an unincorporated association may be accomplished "in any manner prescribed by Rule 4(f) for serving an individual, ***except personal delivery*** under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2) (emphasis added).

The methods of service prescribed by Rule 4(f) (other than personal delivery) are:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other

means, by a method that is reasonably calculated to give notice:

> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the foreign country's law, by:
>
> > . . .
> >
> > (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

The evidence shows, and the district court held, Mem. Op. at 4 [JA___], that there is no internationally agreed means of service under Rule 4(f)(1) that applies in this case.[3]  As such, service could only be accomplished through Rule 4(f)(2) or Rule 4(f)(3).  Virtually all of the service methods set out in those rules require

---

[3] *See generally* Hague Convention on Civil Procedure, *opened for signature* Mar. 1, 1954, 286 U.N.T.S. 265 (Austria a party, but not the United States); Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *opened for signature* Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (United States a party, but not Austria); Note Verbale of the Austrian Federal Ministry for European and International Affairs dated June 21, 2012 (El-Badri Decl. Exh. 7), at 2 [JA___] (noting that there is no E.U.-U.S. treaty that supersedes Austrian law requirements for service of process on OPEC); *see also* Declaration of Wolfgang Hahnkamper ("Hahnkamper Decl.") ¶ 12 [JA___].

reference to, and compliance with, the law of the foreign country in which service is attempted, in this case Austrian law.

For this reason, Freedom Watch is mistaken in arguing that the district court somehow applied Austrian law in favor of U.S. law. FW Br. at 16. The district court's reference to and reliance on Austrian law was a direct result of the faithful application of U.S. law. Pursuant to Rule 4(f), the district court was legally bound to determine whether service of process on OPEC as an unincorporated association was prohibited by Austrian law. Its failure to do so would have resulted in reversible error.

### B.  Freedom Watch's Attempted Service of Process on OPEC Is Prohibited under Austrian Law and Therefore also Improper under Rule 4(f)

Given the significance of Austrian law to the attempted service in this case, OPEC submitted evidence that "Austrian law specifically prohibits (1) direct service from abroad by private parties; (2) service of process on an international organization without the involvement of the Austrian Federal Ministry; and (3) any service of process on OPEC without the express consent of the Secretary General of OPEC." Mem. Op. at 4 [JA___].

As OPEC explained by reference to a Note Verbale from the Austrian Government and an expert opinion on Austrian law from Wolfgang Hahnkamper, Austrian law directs that service of legal documents originating outside of Austria

–18–

must be accomplished either in accordance with existing international legal conventions or, in their absence, in accordance with the provisions of Austrian law. Hahnkamper Decl. ¶¶ 10-11, 13 [JA___].  Because there is no applicable international agreement that regulates service of process, the Austrian Code of Civil Procedure applies and prohibits, absent involvement of Austrian courts, direct transmission of a complaint by personal delivery or mail to a party residing in Austria. *Id.* ¶ 15 [JA___].

In addition, Austrian law requires that the service of foreign legal documents on international organizations that hold privileges and immunities under international law (such as OPEC) requires the assistance and consent of the Austrian Federal Ministry, without exception.  *See* June 21, 2012 Note Verbale (El-Badri Decl. Exh. 7) at 2 [JA___]; Hahnkamper Decl. ¶¶ 15-16 [JA___].

Finally, the OPEC Headquarters Agreement between the Republic of Austria and OPEC, a state treaty officially enacted by resolution of the Austrian Parliament and thus an integral part of Austrian law, governs service of process on OPEC specifically.  Hahnkamper Decl. ¶¶ 17(a)-(b) [JA___]; *see also* Schwebel Op. ¶¶ 12-13 [JA___].  Article 5(2) of the OPEC Headquarters Agreement prohibits service of legal process within OPEC's headquarters seat[4] without the express

---

[4] Article 2 of the OPEC Headquarters Agreement defines the headquarters seat as "the permanent headquarters of OPEC" and "any building outside the headquarters

–19–

consent of OPEC's Secretary General.  OPEC Headquarters Agreement, art. 5(2) [JA\_\_\_]; *see also* June 21, 2012 Note Verbale at 1-2 [JA\_\_\_].  The prohibition in Article 5(2) applies to any service of process on OPEC, even service through the Austrian government.  Hahnkamper Decl. ¶ 17(e) [JA\_\_\_].

The district court considered and accepted this evidence of Austrian law under Fed. R. Civ. P. 44.1, noting that "Freedom Watch does not challenge OPEC's evidence concerning Austrian law, . . . the Court will accept it as accurate."  Mem. Op. at 4 n.2 [JA\_\_\_].

Freedom Watch did not contest the substance of Austrian law below and does not do so on this appeal.  Nor does Freedom Watch contend that its attempted service of process benefited from the participation of the Austrian Foreign Ministry or the consent of the OPEC Secretary General.  *See* El-Badri Decl. ¶ 15 (stating that the OPEC Secretary General never gave consent for OPEC to receive service of process from Freedom Watch) [JA\_\_\_]; FW Br. at 9 (effectively conceding that OPEC never consented to receive service).  Thus Freedom Watch has not disputed that its attempted service of process was prohibited by Austrian law, which renders that service invalid and ineffective under Fed. R. Civ. P. 4(f)(2).  Mem. Op. at 4-5 [JA\_\_\_].

---

seat which is used with the concurrence of the Government for meetings convened by OPEC."  OPEC Headquarters Agreement, art. 2 [JA\_\_\_].

Instead, Freedom Watch argues that Austria's laws and policies are "corrupt" and "unjust," and that the district court's application of Austrian law threatens to "undermine our entire political system."  FW Br. at 16.  Not only do these baseless comments evidence a lack of respect for Austria's sovereignty, they are undermined by the fact that the United States has enacted and enforced similar laws and policies.

For example, much like Austria, the United States also has promulgated rules restricting the conditions under which service of process may be validly made.  *See generally Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (service of process rules are a "longstanding tradition in our system of justice," and our "courts have uniformly held [that] a judgment is void where the requirements for effective service have not been satisfied") (internal quotation marks omitted).  Like Austria, the United States also has entered into headquarters agreements with international organizations that afford similar limitations on service of process.[5] U.S. courts have never found such protections against service of process in

---

[5] *See, e.g.*, Agreement between the United Nations and the United States of America regarding the Headquarters of the United Nations, art. III, sec. 9, June 26, 1947, 61 Stat. 3416 ("The service of legal process . . . may take place within the headquarters district only with the consent of and under conditions approved by the Secretary-General."); Headquarters Agreement between the Organization of American States and the Government of the United States of America, part III, art. IX, sec. 1, May 14, 1992, S. Treaty Doc. No. 102-40 ("The service and execution of legal process . . . may take place within the Headquarters only with the consent of and under conditions approved by the Secretary General.").

headquarters agreements to be "corrupt" and instead have respected and enforced the provisions as binding under U.S. and/or international law.[6]

### C. It Was Appropriate for the District Court to Follow the Reasoning of the Eleventh Circuit's Decision in *Prewitt*

In reaching the conclusion that Freedom Watch's attempt to serve process on OPEC using personal delivery and registered mail was prohibited by Austrian law and thus invalid under the Rule 4(f), the district court found that the Eleventh Circuit's reasoning in the highly similar *Prewitt* case was persuasive authority. Mem. Op. at 5 [JA___] ("The Court . . . views <u>Prewitt</u>'s reasoning as highly persuasive and chooses to adopt it in this case.").

In *Prewitt*, a private plaintiff brought a lawsuit against OPEC claiming that OPEC violated U.S. antitrust laws by conspiring to fix the price of petroleum and petroleum-related products.  The district court dismissed the case, holding that Prewitt's attempt to serve process on OPEC using registered mail was prohibited by Austrian law and thus contrary to the Federal Rules of Civil Procedure.  *See*

---

[6] *See Tachiona v. United States*, 386 F.3d 205, 217 n.6 (2d Cir. 2004) (noting the diplomatic immunity afforded to resident U.N. representatives under the U.S.-U.N, Headquarters Agreement); *Kadic v. Karadzic*, 70 F.3d 232, 247 (2nd Cir. 1995) (stating that, under the U.S.-U.N. Headquarters Agreement "service of legal process … may take place within the headquarters district only with the consent of and under conditions approved by the Secretary-General" and determining service had properly occurred outside headquarters district); *Klinghoffer v. S.N.C. Anchille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 48 (2nd Cir. 1991) (recognizing that the U.S.-U.N. Headquarters Agreement extends immunity to representatives of U.N. members, but not observers and other entities).

*Prewitt Enters., Inc. v. OPEC*, 224 F.R.D. 497 (N.D. Ala. 2002). On appeal, the Eleventh Circuit affirmed the dismissal, finding that "Austrian law clearly provides protection to OPEC as an international organization from all methods of service of process without its consent" and without the involvement of Austrian authorities. *Prewitt*, 353 F.3d at 928. The *Prewitt* court also rejected plaintiff's arguments that (1) service on OPEC should be deemed effective because OPEC had actual notice of the lawsuit, and (2) the court should order alternative service pursuant to Federal Rule of Civil Procedure 4(f)(3). *Id.* at 925, 928.[7] Given the factual and legal similarities between the two cases, it was appropriate and reasonable for the district court to follow the Eleventh Circuit's reasoning in *Prewitt*.

Repeating arguments that were raised before and rejected by the district court, Freedom Watch argues that "*Prewitt* is not a case from this circuit so it has no precedential weight vis-à-vis this court." FW Br. at 11 n.2. Freedom Watch

---

[7] There is no question that Freedom Watch was aware of the *Prewitt* precedent before it filed its complaint in this proceeding. Previously, Freedom Watch had filed a nearly identical complaint against OPEC before the Southern District of Florida. After the filing of the complaint and before OPEC made any appearance, the district court *sua sponte* ordered Freedom Watch to show cause as to how its attempted service on OPEC using personal delivery was valid given the *Prewitt* precedent. After receiving Freedom Watch's submissions, the district court dismissed the complaint because (1) service of process by direct personal delivery on OPEC, like service of process by mail, is prohibited by Austrian law, and therefore ineffective under Fed. R. Civ. P. 4(f)(2), and (2) service of process absent the express consent of the OPEC Secretary General would constitute an affront to Austrian law, and therefore was not in accordance with Fed. R. Civ. P. 4(f)(3). Order Denying Motion for Reconsideration, *Freedom Watch, Inc. v. OPEC*, No. 08-cv-21630 (S.D. Fla. Feb. 26, 2009), at 2-5.

does not elaborate, however, on why the reasoning of the *Prewitt* decision should not be adopted here. This Court has held that case law from "sister circuits" constitutes "persuasive authority." *Youngbey v. March*, 676 F.3d 1114, 1117 (D.C. Cir. 2012). Freedom Watch has not provided any reason, much less a compelling one, "to stray from <u>Prewitt</u>'s reasoning", Mem. Op. at 5 [JA___], particularly given that the cases are nearly identical in many respects.

Freedom Watch also argues that *Prewitt* only dealt with the issue of service by registered mail, whereas Freedom Watch "exhausted all reasonable avenues of serving" OPEC, including service by personal delivery and a request for alternate methods of service. FW Br. at 15-16. There is no merit to this distinction. In addition to rejecting service by registered mail, the Eleventh Circuit considered and denied a request for alternate methods of service on OPEC. *Prewitt*, 353 F.3d at 927-28. Moreover, the fact that the *Prewitt* decision did not address the issue of service of process on OPEC by personal delivery does not advance Freedom Watch's position, given that personal delivery on a foreign unincorporated association like OPEC is already expressly prohibited by Rule 4(h).

### D. The District Court Did Not "Provide OPEC with Immunity for Violating U.S. Law"

Freedom Watch argues that the district court "erred by addressing the issue of immunity," FW Br. at 9, and suggests that the district court's ruling exceeded the scope of the issues before it. Specifically, Freedom Watch claims:

> The District Court dismissed this action based on procedural grounds that venue was improper. Since the basis for dismissal was limited solely to improper basis, the District Court did not have to address whether OPEC is immune from suit. However, the District Court went beyond the appropriate bounds of discussion in its order dismissing the action solely based on improper venue . . . .

FW Br. at 8. This argument is confused and incorrect.

The district court did not base its decision to dismiss the complaint on the grounds of improper venue. The issue of proper venue was not argued by the parties or addressed anywhere in the court's decision. The sole issue before the court was the validity of Freedom Watch's attempted service of process on OPEC.

Moreover, the district court did not address the question of immunity from liability. The district court agreed, consistent with the conclusion reached by *Prewitt*, that service of process attempted by Freedom Watch and any of the other methods of service under Rule 4(f) would violate and/or cause serious offense to Austrian law, and therefore were ineffective under Rule 4(f). The district court did not suggest that OPEC would be immune from suit where service was conducted in accordance with Austrian law (*i.e.*, with the assistance of the Austrian Foreign Ministry and the consent of the OPEC Secretary General).

Freedom Watch's contention that "[i]t is imperative that this Court become involved in this matter" given "politicians' failure and refusal to take action to end the price fixing cartel," FW Br. at 10, is equally flawed. To the extent

circumstances create "a loophole" limiting service of process, this Court has observed that the "legislature can, of course, remove it by amending [the statute] to provide an alternative method of service." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 515-16 (D.C. Cir. 2002) (finding that defendant's agent's "authority to receive service of process on behalf of [defendant] is created by, and expressly limited by the D.C. Code" and rejecting plaintiff's argument that it "would be unfair if a foreign corporation . . . could evade [ ] jurisdiction by keeping its agents out of the District"). It is not the function of this Court to override the established laws and rules relating to service of process that apply in this case in order to make law, which under the U.S. system is plainly the province of the legislature.

### E.    Actual Notice Alone Is Insufficient to Achieve Effective Service of Process

Freedom Watch argues that the district court should have found that OPEC had been served regardless of the requirements of the Federal Rules because OPEC has actual notice of Freedom Watch's complaint. FW Br. at 10-12. The district court declined to do so below, adopting the highly analogous reasoning in *Prewitt*, *i.e.*, that before a court may exercise jurisdiction over a defendant, there must be more than actual notice. Mem. Op. at 5 [JA___] (citing *Prewitt*, 353 F.3d at 925, 928).

The U.S. Supreme Court has repeatedly confirmed that actual notice alone is insufficient to achieve effective service of process, and that formal requirements

for service of process must be satisfied. *See, e.g., Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999) ("An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, *by formal process*.") (emphasis added); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, *the procedural requirements of service of summons must be satisfied*. . . . [T]here *must be more than notice to the defendant . . . .*") (emphasis added).[8]

Moreover, under Freedom Watch's reasoning, motions to dismiss for insufficient service of process under Fed. R. Civ. P. 12(b)(5) would be meaningless because the act of filing the Rule 12(b)(5) motion itself would be an acknowledgement of actual notice. The fact that courts routinely dismiss claims on the basis of Rule 12(b)(5) demonstrates that this cannot be the case. *See, e.g.*,

---

[8] *See also Mann v. Castiel*, 729 F. Supp. 2d 191, 196 (D.D.C. 2010) ("Proof of actual notice will not satisfy" the requirements of Rule 4 "because notice alone cannot cure an otherwise defective service.") (internal quotations and citation omitted), *aff'd* 681 F.3d 368 (D.C. Cir. 2012); *Whitehead v. CBS/Viacom, Inc.*, 221 F.R.D. 1, 3 (D.D.C. 2004) ("In any event, plaintiff cannot fulfill his burden under Rule 4(h) by showing that defendant had notice of the suit."); *BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 84 (D.D.C. 2003) ("Actual notice does not fulfill the requirements of Rule 4(h)(1)."); *Baade v. Price*, 175 F.R.D. 403, 405 (D.D.C. 1997) ("The law is clear and mandates that there be strict compliance to Rule 4(h) and it is irrelevant whether or not defendant [ ] had actual notice of the lawsuit.") (citation omitted); *see generally Prewitt*, 353 F.3d at 925 ("[E]ven though OPEC had actual notice of the filing of the suit, service of process was ineffective because it was clearly not in substantial compliance with the requirements of [Rule 4].").

*Chen v. Dist. of Columbia*, 256 F.R.D. 263, 266 (D.D.C. 2009) ("Courts routinely dismiss cases for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.") (citation omitted).

The cases cited by Freedom Watch are inapposite.  In *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, No. MDL 1428 SAS, 2003 WL 21659368 (S.D.N.Y. July 15, 2003),[9] which was considered and rejected by the Eleventh Circuit in *Prewitt*,[10] the court initially had authorized service on an Austrian defendant by mail prior to determining that service of process by direct mail was prohibited by Austrian law, and therefore was improper and invalid.  *Ski Train*, 2003 WL 21659368, at *3-4.  The court declined to dismiss the case for lack of service of process in large part because the "plaintiffs should not be penalized for complying with this Court's order" erroneously authorizing an invalid means of service.  *Id.* at *4.    Further, as noted by the Eleventh Circuit, *Ski Train* did not involve any express prohibition against service without consent of the defendant, as is the case with the OPEC Headquarters Agreement.   *Prewitt*, 353 F.3d at 928 n.20.[11]

---

[9] Freedom Watch incorrectly cites to *In re Ski Train Fire in Kaprun, Austria on November 11, 2001 [sic]*, 343 F. Supp. 2d 208 (S.D.N.Y. 2004) in its opening brief.  *See* FW Br. at 11.  This decision does not deal with service of process.

[10] 353 F.3d at 928 n.20.

[11] The other cases cited by Freedom Watch are also inapposite because they address only the statutory requirements for service of process under the Foreign

**F.     Dismissal of this Lawsuit for Insufficient Service of Process Does Not Violate the Sherman Act or U.S. Public Policy**

Before the district court, Freedom Watch made a number of inaccurate, and often inflammatory, arguments that public policy requires the court to find effective service of process on OPEC.  The district court rejected these arguments, finding that they "do not justify ignoring the Federal Rules of Civil Procedure," especially in light of the "underlying purposes of service of process."  Mem. Op. at 6 n.3 [JA___].

The same result should apply to Freedom Watch's repetition of the same flawed arguments here.  FW Br. at 7.  For example, Freedom Watch quotes "one judge" as stating that "[t]he notion of wholly insulating from service of process an entity such as OPEC—whose decisions surely affect the daily lives of most Americans—is for many, a bitter pill to swallow."  FW Br. at 9-10.  This statement is actually a truncated quotation from the district court decision in *Prewitt*, which dismissed the complaint against OPEC for lack of service of process.  *Prewitt*, 224

Sovereign Immunities Act ("FSIA"), which differ from the requirements of Rule 4. *See, e.g.*, *Montanez Miranda v. Banco Progreso, S.A.C.A.*, 973 F. Supp. 89, 91 (D.P.R. 1997) (observing that the FSIA intentionally authorizes "a looser standard for service" than the Federal Rules of Civil Procedure, "including simple delivery if reasonably calculated to give actual notice") (internal quotation marks and citations omitted); *Sherer v. Construcciones Aeronauticas, S.A.*, 987 F.2d 1246 (6th Cir. 1993) (declining to find service was improper under the FSIA for omission of a document translation with service papers where defendant had actual notice and no prejudice would result); *Velidor v. L/P/G/ Benghazi*, 653 F.2d 812 (3d Cir. 1981) (finding service was proper under the FSIA where delivered to the agent of the foreign instrumentality).

F.R.D. at 502.   The sentences immediately following the quoted passage state: "But the Court must apply the rules as they are written. The rules reflect a clearly expressed diplomatic policy choice of Congress to respect the normative and, ultimately, the legislative, decisions of foreign sovereigns."   *Id.*   Far from supporting Freedom Watch's assertion, this statement recognizes that the Federal Rules embody a policy of respect for foreign laws and the decisions of foreign sovereigns that supports dismissal in this case.   *See also generally FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1327 n.150 (D.C. Cir. 1980) ("Principles of international comity require that domestic courts not take action that may cause the violation of another nation's laws.") (citation omitted).

Freedom Watch is also incorrect in arguing that dismissal of this case for insufficient service of process would violate the Sherman Act and render it meaningless.   *See* FW Br. at 13-14.   The unexceptional reality that lawsuits must follow certain procedural requirements to permit a court to exercise jurisdiction applies to complaints brought under the Sherman Act as much as under any other statute.

## II.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO AUTHORIZE ALTERNATIVE METHODS OF SERVICE

Freedom Watch argues that it was "unreasonable and imprudent" for the district court to refuse to authorize alternative methods of service upon OPEC,

including (1) service by facsimile or email pursuant to Fed. R. Civ. P. 4(f)(3); (2) service through U.S. counsel; and (3) service pursuant to the provisions of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a). *See* FW Br. at 4. As explained below, however, it would have been contrary to law and principles of international comity for the district court to have ordered the alternative methods of service urged by Freedom Watch. Indeed, in virtually identical circumstances the Eleventh Circuit concluded that directing alternative service of process on OPEC would be an abuse of a court's discretion. *Prewitt*, 353 F.3d at 928 n.21. Thus, the district court plainly did not abuse its discretion in declining to authorize alternative methods of service against OPEC in this case.

### A.    Ordering Alternative Methods of Service in this Case Would Violate and Cause Serious Offense to Austrian Law

Rule 4(f)(3) of the Federal Rules of Civil Procedure provides that a court may serve an individual (or unincorporated association) in a foreign country "by other means not prohibited by international agreement." Freedom Watch contends that this provision endows the court with "discretion to liberally approve alternate methods of service." FW Br. at 17.

This discretion, however, is circumscribed by an admonition against authorizing methods of service that would violate or cause offense to foreign law. As explained in the 1993 Advisory Committee Notes to Rule 4(f), "*[s]ervice by methods that would violate foreign law is not generally authorized*. . . . Inasmuch

–31–

as our Constitution requires that reasonable notice be given, an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law." Fed R. Civ. P. 4(f), 1993 Advisory Committee Notes (emphasis added).

Similarly, this Court also has stressed the need for "judicial sensitivity to foreign territorial sovereignty when scrutinizing particular methods of overseas service." *Compagnie de Saint-Gobain*, 636 F.2d at 1314; *see also Klein v. United States*, 278 F.R.D. 94, 97 (W.D.N.Y. 2011) (noting that the government had not contended that the alternative method of service "was proper under international or Singapore law" and finding that "[s]ervice was therefore ineffective").

In this case, there is no question that the alternative methods of service on OPEC contemplated by Freedom Watch would violate and cause serious offense to Austrian law. *See* Hahnkamper Decl. ¶¶ 16-17 [JA___] (noting that under Austrian law, service of process directly on OPEC must be made through the Austrian Federal Ministry and with the consent of the OPEC Secretary General, and that any other attempts at service of process by a private party on an international organization are prohibited). The likelihood of such an affront also can be seen from the Note Verbale delivered by the Austrian government to the United States government in prior U.S. litigation:

> As a matter of international law, the Republic of Austria, like many other European civil law countries, maintains

–32–

> the view that the service of legal documents is a governmental act performed in the exercise of sovereign authority. As a consequence, in the absence of applicable international agreements or unilateral Austrian acts authorizing such service, *Austria regards the direct service of foreign legal documents in her territory by foreign authorities or by private individuals without the assistance or explicit or implicit consent of the competent Austrian authorities as an infringement of her sovereignty.*

Note Verbale from the Austrian Federal Ministry for Foreign Affairs dated Jan. 7, 2003 (Hahnkamper Decl. Exh. 7) at ¶ 1 [JA___] (emphasis added).

In short, any attempted service on OPEC in this case pursuant to Rule 4(f)(3) would violate or cause serious offense to Austrian law. It therefore was appropriate, and not an abuse of discretion, for the district court to refuse to permit alternative methods of service based on the persuasive reasoning of the Eleventh Circuit in the nearly identical circumstances of the *Prewitt* case.

Much like this case, the plaintiffs in *Prewitt* argued that Rule 4(f)(3) permitted other means of service, such as fax or email, "even if the service is contrary to the laws of Austria." *Prewitt*, 353 F.3d at 927. The Eleventh Circuit observed that "[r]ather than minimizing offense to Austrian law, the failure to obtain OPEC's consent [prior to service of process] would constitute *a substantial affront to Austrian law*." *Id.* (emphasis added). The Eleventh Circuit concluded that it therefore was appropriate for a court to refuse to authorize alternative service in such circumstances:

–33–

> Austrian law clearly provides protection to OPEC as an international organization from all methods of service of process without its consent and also requires that any service of process from abroad be effected through Austrian authorities.  In this case, OPEC has made clear that it refuses to consent expressly to service of process by [plaintiff]; thus, the district court did not abuse its discretion in denying [plaintiff's] motion to authorize alternative means of service.

*Id.* at 928.  The *Prewitt* court further emphasized that its decision derived from the particular circumstances surrounding service of process on OPEC:

> We do not say that a district court *never* has discretion to direct service of process under Fed. R. Civ. P. 4(f)(3) that is in contravention of a foreign law.  *Rather we are satisfied that under the facts and circumstances of this case, directing service of process would constitute a clear abuse of discretion.*

*Id.* at 928 n.21 (emphasis added).  Given the very similar circumstances presented here, the district court properly declined to authorize alternative service of process in contravention of Austrian law.

The cases cited by Freedom Watch are distinguishable because none of them purport to authorize alternative methods of service in violation of foreign law.  For example, Freedom Watch cites the Ninth Circuit's decision in *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002), for the proposition that "the Constitution does not require any particular method of process, only that the method selected be reasonable [sic] calculated to provide notice and an opportunity to respond."  FW Br. at 17.  In *Rio*, however, the Ninth Circuit was merely

explaining that a court may adapt itself to new technological innovations when authorizing alternative service otherwise valid under the Rules. *Rio*, 284 F.3d at 1017. *Rio* did not consider or reject the applicability of any foreign law, much less authorize alternative service in violation of a foreign law. *See Prewitt*, 353 F.3d at 928 (distinguishing *Rio*, among other reasons, because "there was no discussion of [foreign] law at all, much less of any prohibitions relating to service of process"). The other cases cited by Freedom Watch are similarly inapposite.[12]

### B. OPEC Has Not Been and Cannot Be Served Through Its U.S. Counsel

Freedom Watch argues that "OPEC has also been served through its attorneys, who are located in Washington, D.C.," as "evidenced by OPEC's active participation in this litigation." FW Br. at 19. The district court did not abuse its discretion in rejecting this argument.

As an initial matter, the record of this proceeding does not support Freedom Watch's bare assertion that it served process on OPEC's U.S. counsel. *See* FW Br. at 3. As the district court observed, "Freedom Watch has not filed proof of service

---

[12] *See, e.g.*, *Liberty Media Holdings, LLC v. Vingay.com*, No. CV-11-0280-PHX-LOA, 2011 WL 810250, at *4 (D. Ariz. March 3, 2011) (approving service by email because "Plaintiff has demonstrated that it has been unable to obtain a physical address for Defendants" and "Plaintiff has shown that . . . Defendants conduct business through the internet and have contacted Plaintiff's counsel *via* email"); *Xcentric Ventures, LLC v. Karsen, Ltd.*, No. CV 11-1055-PHX-FJM, 2011 WL 3156966, at *1 (D. Ariz. July 26, 2011) (approving service by email in a case where "defendant expressly agreed to accept service of process at its Russian address").

of process on OPEC's attorneys with the Court." Mem. Op. at 5 [JA___]. The mere fact that U.S. counsel actively represented OPEC in this litigation does not prove that Freedom Watch ever attempted formal service on OPEC through its U.S. counsel.

In any event, the district court properly held that OPEC could not have been served through its U.S. counsel as a legal matter because, as evidenced by a declaration from OPEC's Secretary General, OPEC never authorized its U.S. counsel "to accept or receive service of process from [Freedom Watch] in this case." Mem. Op. at 5 [JA___] (citing El-Badri Supp. Decl. ¶ 4). The district court observed that "[d]elivering a summons and complaint to a corporate representative who is <u>not</u> an officer, a managing or general agent, or an agent authorized to accept service fails to satisfy the requirements of Rule 4(h)." *Id*. at 6 [JA___] (citing *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 65 (D.D.C. 2011)).

The district court's ruling follows this Court's long-standing jurisprudence. *See WICA, Inc. v. WWSW, Inc.*, 191 F.2d 502, 503 (D.C. Cir. 1951) (quashing service against two non-resident corporations with counsel who, though "specifically authorized to act as its attorney[s] in [the] proceedings," were not authorized to accept service of process on behalf of their corporate clients); *Schwarz v. Thomas*, 222 F.2d 305, 308 (D.C. Cir. 1955) (quashing service where defendant's "uncontradicted affidavit" showed that defendant "never authorized or

ratified acceptance of the service of process" by her attorney). Freedom Watch does not address this precedent, but instead cites decisions of district courts in other jurisdictions in circumstances that do not support alternative service on OPEC in this case.[13] FW Br. at 18.

In light of the evidence in the record that OPEC never authorized White & Case to accept or receive service of process on its behalf (*see* El-Badri Supp. Decl. ¶ 4) [JA___], it was not an abuse of discretion for the district court to conclude that OPEC has not been and cannot be validly served through its U.S. counsel in this case.

## III. FREEDOM WATCH'S OTHER ARGUMENTS ARE NOT PROPERLY BEFORE THIS COURT

### A. Freedom Watch's Newly Raised Argument Regarding Service of Process under the Foreign Sovereign Immunities Act Is Procedurally Improper and Contrary to Precedent

Freedom Watch raises a new argument on appeal that the district court has discretion to authorize service of process on OPEC pursuant to procedures set forth in the FSIA, 28 U.S.C. § 1608(a). *See* FW Br. at 19-20.

---

[13] *See, e.g.*, *LG Elecs., Inc. v. Asko Appliances, Inc.*, No. 08-828 (JAP), 2009 WL 1811098, at *4 (D. Del. June 23, 2009) (allowing service through counsel after the defendant ignored the direction of the Clerk of the Court in Seoul to respond within two weeks of receiving the Complaint to indicate whether it wished to accept delivery, refuse delivery but still have the package sent to it, or refuse delivery entirely).

This argument suggesting that service is otherwise available under federal law was never presented to the district court, which expressly found otherwise. Mem. Op. at 3 [JA___] (noting that Freedom Watch did not dispute that Fed. R. Civ. P. 4(h)(2) governs service on OPEC because "federal law does not provide otherwise"). Therefore this argument "cannot be considered for the first time on appeal." *United States v. Stover*, 329 F.3d 859, 872 (D.C. Cir. 2003); *see also Sampaio v. Inter-Amer. Dev. Bank*, 468 F. App'x 10, 11 (D.C. Cir. 2012) (declining to entertain appellant's newly-raised argument on appeal in support of finding a waiver of international organizational immunity).

In any event, Freedom Watch fails to account for authority that is directly contrary to its position. By its own terms, the FSIA applies only to foreign sovereigns and their agencies and instrumentalities. *See* 28 U.S.C. § 1603(a), (b). OPEC is an international organization whose members are foreign sovereign states; contrary to Freedom Watch's contentions, OPEC is not an agency or instrumentality of a foreign state. *See Prewitt*, 353 F. 3d at 922 n.9 ("It is clear that OPEC is not a foreign state or political subdivision of a foreign state pursuant to § 1608 of the FSIA.")*; see also Int'l Assoc. of Machinists and Aerospace Workers v. O*PEC, 477 F. Supp. 553 (C.D. Cal. 1979), *aff'd* 649 F.2d 1354 (9th Cir. 1981) (dismissing OPEC as a party to the case because OPEC could not be legally served under the FSIA).

**B.    Freedom Watch's Remaining Arguments Address Issues That Are Not Before This Court**

In addition to addressing service of process, Freedom Watch includes in its brief arguments on (1) personal jurisdiction, (2) "state action," and (3) "defendant's other claims."  *See* FW Br. at 21-28.   These arguments are not properly before this Court because, pursuant to the bifurcated procedure followed in the district court, the only issue addressed and decided by the district court was the adequacy of the attempted service of process on OPEC.

In its Minute Order dated August 7, 2012 [JA___], the district court bifurcated the proceeding so that OPEC first would submit a motion to dismiss addressing only its objections to service of process, with notice of other defenses OPEC would raise (relating to (1) the act of state doctrine; (2) the political question doctrine; (3) failure to allege a plausible conspiracy involving OPEC; (4) lack of antitrust standing; and (5) lack of personal jurisdiction)) if the district court denied OPEC's motion to dismiss on service of process grounds.[14]   The district court's dismissal for lack of service of process precluded the need for briefing on these other defenses, which the district court did not address in its Opinion. Therefore, Freedom Watch's arguments relating to defenses that were not decided

---

[14] OPEC reiterates its preservation of all its asserted defenses here.

below and that are not before this Court on appeal must be disregarded.[15]   *See*

*Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008) (quoting *Singleton v. Wulff*,

428 U.S. 106, 120 (1976)) ("It is the general rule, of course, that a federal appellate

court does not consider an issue not passed upon below."); *Doe v. DiGenova*, 779

F.2d 74, 89 (D.C. Cir. 1985) ("When the issue has, through no fault of the parties,

not been briefed or argued in any forum, the appropriate disposition is typically to

remand the case to the district court.").

---

[15]  Notably, Freedom Watch did not include any of these other issues in its
Statement of Issues dated March 1, 2013 or its list of issues presented in its brief
dated July 15, 2013.

## CONCLUSION

For the foregoing reasons, the district court's January 15, 2013 Order granting OPEC's motion to dismiss and dismissing the complaint should be affirmed.

Respectfully submitted on August 14, 2013:

/s/ Carolyn B. Lamm

| | |
|---|---|
| Carolyn B. Lamm | Robert A. Milne |
| Hansel T. Pham | Raj S. Gandesha |
| Anne D. Smith | Bryan D. Gant |
| Nicolle E. Kownacki | |
| WHITE & CASE LLP | WHITE & CASE LLP |
| 701 Thirteenth Street, NW | 1155 Avenue of the Americas |
| Washington, DC 20005 | New York, NY 10036 |
| (202) 626-3600 | (212) 819-8200 |
| clamm@whitecase.com | rmilne@whitecase.com |
| hpham@whitecase.com | rgandesha@whitecase.com |
| asmith@whitecase.com | bgant@whitecase.com |
| nkownacki@whitecase.com | |

*Attorneys for the Organization*
*of the Petroleum Exporting Countries*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 9,783 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: August 14, 2013          /s/ Carolyn B. Lamm
                                Carolyn B. Lamm

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2013, I caused to be served an electronic copy of the foregoing Brief of Appellant by filing on the CM/ECF system, and two true and correct paper copies by certified mail on the following counsel for Plaintiff-Appellant Freedom Watch, Inc.:

Larry Klayman
Freedom Watch, Inc.
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
(310) 595-0800
leklayman@gmail.com


Date: August 14, 2013          /s/ Carolyn B. Lamm
                               Carolyn B. Lamm

# ADDENDUM OF STATUTES AND REGULATIONS

Page(s)

28 U.S.C. § 1291 .................................................................45

28 U.S.C. § 1603 .................................................................46

28 U.S.C. § 1608 ............................................................ 47-49

Federal Rule of Civil Procedure 4(f) and 1993 Advisory
    Committee Note ......................................................... 50-53

Federal Rule of Civil Procedure 4(h) .....................................54

Federal Rule of Civil Procedure 44.1 ....................................55

Agreement between the United Nations and United States
    of America regarding the Headquarters of the United
    Nations, art. III, sec. 9, June 26, 1947, 61 Stat. 3416 .........56

Headquarters Agreement between the Organization of
    American States and the Government of the United
    States of America, part III, art. IX, sec. 1, May 14, 1992,
    S. Treaty Doc. No. 102-40 .............................................57

Agreement between the Republic of Austria and the
    Organization of the Petroleum Exporting Countries
    Regarding the Headquarters of the Organization of the
    Petroleum Exporting Countries, Aus.-OPEC., arts. 2, 5,
    Feb. 18, 1974, 2098 U.N.T.S. 415 ....................................58

**28 U.S.C. § 1291.  Final Decisions of District Courts**

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

## 28 U.S.C. § 1603.  Definitions

For purposes of this chapter—

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332 (c) and (e) of this title, nor created under the laws of any third country.

(c) The "United States" includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.

(d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

(e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

**28 U.S.C. § 1608.  Service; Time to Answer; Default**

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

>   (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

>   (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

>   (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

>   (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

>   As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

> (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

> (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

> (C) as directed by order of the court consistent with the law of the place where service is to be made.

(c) Service shall be deemed to have been made—

(1) in the case of service under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic note; and

(2) in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.

(d) In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.

(e) No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

**Federal Rule of Civil Procedure 4(f)**

(f) Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) unless prohibited by the foreign country's law, by:

(i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

**1993 Advisory Committee Note to Rule 4(f)**

Subdivision (f). This subdivision provides for service on individuals who are in a foreign country, replacing the former subdivision (i) that was added to Rule 4 in 1963. Reflecting the pattern of Rule 4 in incorporating state law limitations on the exercise of jurisdiction over persons, the former subdivision (i) limited service outside the United States to cases in which extraterritorial service was authorized by state or federal law. The new rule eliminates the requirement of explicit authorization. On occasion, service in a foreign country was held to be improper for lack of statutory authority. *E.g., Martens v. Winder*, 341 F.2d 197 (9th Cir.), *cert. denied*, 382 U.S. 937 (1965). This authority, however, was found to exist by implication. *E.g., SEC v. VTR, Inc*., 39 F.R.D. 19 (S.D.N.Y. 1966). Given the substantial increase in the number of international transactions and events that are the subject of litigation in federal courts, it is appropriate to infer a general legislative authority to effect service on defendants in a foreign country.

A secondary effect of this provision for foreign service of a federal summons is to facilitate the use of federal long-arm law in actions brought to enforce the federal law against defendants who cannot be served under any state law but who can be constitutionally subjected to the jurisdiction of the federal court. Such a provision is set forth in paragraph (2) of subdivision (k) of this rule, applicable only to persons not subject to the territorial jurisdiction of any particular state.

Paragraph (1) gives effect to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, which entered into force for the United States on February 10, 1969. See 28 U.S.C.A., Fed.R.Civ.P. 4 (Supp. 1986). This Convention is an important means of dealing with problems of service in a foreign country. See generally 1 B. Ristau, International Judicial Assistance §§4–1–1 to 4–5–2 (1990). Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service. See *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) (noting that voluntary use of these procedures may be desirable even when service could constitutionally be effected in another manner); J. Weis, The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity, 50 U. Pitt. L. Rev. 903 (1989). Therefore, this paragraph provides that, when service is to be effected outside a judicial district of the United States, the methods of service appropriate under an applicable treaty shall be employed if available and if the treaty so requires.

The Hague Convention furnishes safeguards against the abridgment of rights of parties through inadequate notice. Article 15 provides for verification of actual notice or a demonstration that process was served by a method prescribed by the internal laws of the foreign state before a default judgment may be entered. Article 16 of the Convention also enables the judge to extend the time for appeal after judgment if the defendant shows a lack of adequate notice either to defend or to appeal the judgment, or has disclosed a prima facie case on the merits.

The Hague Convention does not specify a time within which a foreign country's Central Authority must effect service, but Article 15 does provide that alternate methods may be used if a Central Authority does not respond within six months. Generally, a Central Authority can be expected to respond much more quickly than that limit might permit, but there have been occasions when the signatory state was dilatory or refused to cooperate for substantive reasons. In such cases, resort may be had to the provision set forth in subdivision (f)(3).

Two minor changes in the text reflect the Hague Convention. First, the term "letter of request" has been added. Although these words are synonymous with "letter rogatory," "letter of request" is preferred in modern usage. The provision should not be interpreted to authorize use of a letter of request when there is in fact no treaty obligation on the receiving country to honor such a request from this country or when the United States does not extend diplomatic recognition to the foreign nation. Second, the passage formerly found in subdivision (i)(1)(B), "when service in either case is reasonably calculated to give actual notice," has been relocated.

Paragraph (2) provides alternative methods for use when internationally agreed methods are not intended to be exclusive, or where there is no international agreement applicable. It contains most of the language formerly set forth in subdivision (i) of the rule. Service by methods that would violate foreign law is not generally authorized. Subparagraphs (A) and (B) prescribe the more appropriate methods for conforming to local practice or using a local authority. Subparagraph (C) prescribes other methods authorized by the former rule.

Paragraph (3) authorizes the court to approve other methods of service not prohibited by international agreements. The Hague Convention, for example, authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances. Other circumstances that might justify the use of additional methods include the failure of the foreign country's Central Authority to effect service within the six-month

period provided by the Convention, or the refusal of the Central Authority to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States. In such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement. Inasmuch as our Constitution requires that reasonable notice be given, an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law. A court may in some instances specially authorize use of ordinary mail. *Cf. Levin v. Ruby Trading Corp.*, 248 F. Supp. 537 (S.D.N.Y. 1965).

**Federal Rule of Civil Procedure 4(h)**

(h) Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:

    (1) in a judicial district of the United States:

        (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

        (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or

    (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

**Federal Rule of Civil Procedure 44.1.  Determining Foreign Law**

A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

**Agreement between the United Nations and United States of America regarding the Headquarters of the United Nations, art. III, sec. 9**

Section 9

(a) The headquarters district shall be inviolable. Federal, state or local officers or officials of the United States, whether administrative, judicial, military or police, shall not enter the headquarters district to perform any official duties therein except with the consent of and under conditions agreed to by the Secretary-General. The service of legal process, including the seizure of private property, may take place within the headquarters district only with the consent of and under conditions approved by the Secretary-General.

(b) Without prejudice to the provisions of the General Convention or Article IV of this agreement, the United Nations shall prevent the headquarters district from becoming a refuge either for persons who are avoiding arrest under the federal, state, or local law of the United States or are required by the Government of the United States for extradition to another country, or for persons who are endeavouring to avoid service of legal process.

**Headquarters Agreement between the Organization of American States and the Government of the United States of America, part III, art. IX, sec. 1**

Section 1

The Headquarters shall be inviolable. The Headquarters, their furnishings, and other property thereon and all means of transportation belonging to the Organization shall be immune from search, requisition, attachment, or execution. The service and execution of legal process, including the seizure of private property, may take place within the Headquarters only with the consent of and under conditions approved by the Secretary General. Federal, state, or local officials of the United States, whether administrative, judicial, military, or police, shall not enter the Headquarters, except with the consent of and under conditions agreed to by the Secretary General. The consent of the Secretary General may be assumed in the case of fire or other similar disaster that threatens the public safety and requires prompt protective action, for the limited purpose of taking such protective action as may be necessary.

**Agreement between the Republic of Austria and the Organization of the Petroleum Exporting Countries Regarding the Headquarters of the Organization of the Petroleum Exporting Countries, Aus.-OPEC., arts. 2, 5**

Article 2

(1) The permanent head of OPEC, as approved by Resolution of the Conference of OPEC and as defined in the supplemental agreement between OPEC and the Government referred to in Article 1 (k), shall be in the headquarters seat.

(2) Any building outside the headquarters seat which is used with the concurrence of the Government for meetings convened by OPEC shall be temporarily included in the headquarters seat.

Article 5

(1) The headquarters seat shall be inviolable.  No officer or official of the Republic of Austria, or other person exercising any public authority within the Republic of Austria, shall enter the headquarters seat to perform any duties therein except with the consent of, and under conditions approved by, the Secretary General.  The consent of the Secretary General may, however, be assumed in case of fire or other disaster requiring prompt protective action.

(2) The service of legal process, including the seizure of private property, shall not take place within the headquarters seat except with the express consent of, and under conditions approved by, the Secretary General.