**ORAL ARGUMENT NOT YET SCHEDULED**
**NO. 13-7019**

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

FREEDOM WATCH, INC.,
Plaintiff-Appellant,

v.

ORGANIZATION OF THE PETROLEUM EXPORTING COUNTRIES,
Defendant-Appellee.

_____

**ON APPEAL FROM AN ORDER**
**OF THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

**BRIEF OF *AMICUS CURIAE* REPUBLIC OF AUSTRIA**
**IN SUPPORT OF DEFENDANT-APPELLEE AND**
**AFFIRMANCE OF THE DISTRICT COURT'S ORDER**

_____

Thomas G. Corcoran, Jr.
BERLINER, CORCORAN & ROWE, L.L.P.
1101 17th Street, N.W., Suite 1100
Washington, DC 20036-4798
[Tel]  202-293-5555
[Fax] 202-293-9035
[Email] tgc@bcr-dc.com

*Attorney for Amicus Curiae*
*Republic of Austria*

August 21, 2013

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................... i

TABLE OF AUTHORITIES ........................................................... ii

INTEREST OF AMICUS CURIAE ............................................... 1

ARGUMENT… ................................................................. 2

   I.  THE DISTRICT COURT CORRECTLY HELD THAT
      AUSTRIAN LAW PROHIBITS SERVICE ON OPEC WITHOUT
      THE ASSISTANCE OF THE FEDERAL MINISTRY FOR
      EUROPEAN AND INTERNATIONAL AFFAIRS AND THE
      CONSENT OF OPEC'S SECRETARY GENERAL ......................... 2

      A.   Service On OPEC Is Prohibited Except In Compliance With
           Austrian Law ....................................................................... 2

      B.   Freedom Watch's Arguments To Justify Its Violation of
           Austrian Law Are Erroneous....................................... 7

CONCLUSION .......................................................................... 10

CERTIFICATE OF COMPLIANCE WITH RULE 32(a).......................... 12

CERTIFICATE OF COMPLIANCE WITH RULE 29(c)(5) ................ 13

CERTIFICATE OF SERVICE ....................................................... 14

ADDENDUM OF EXHIBITS ...................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Alpha Lyracom Space Communications, Inc. v. Communications Satellite Corp.*, 946 F.2d 168 (2d Cir. 1991) ...................................................... 6

*Alpha Omega Tech., Inc. v. PGM-Comercio e Participacoes Ltda.*, No. 93 Civ. 6257, 1994 WL 37787 (S.D.N.Y. Feb. 9, 1994) ............ 10

*Kadic v. Karadzic,* 70 F.3d 232 (2d Cir. 1995) .................................................... 6

*Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44 (2d Cir. 1991) .................................................... 6

*\*Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries,* 353 F.3d 916 (11th Cir. 2003) .................................................... 6,7,8,9

*In re Ski Train Fire in Kaprun,* No. 1428 (SAS), 01 Civ. 7342, 2003 WL 1807148, (S.D.N.Y. April 4, 2003) .................................................... 9

*Tucker v. Interarms,* 186 F.R.D. 450 (N.D. Ohio 1999) ........................................ 9

*United States v. Dizdar,* 581 F.2d 1031 (2d Cir. 1978) ........................................ 6

**Other Authorities**

*Agreement Between the Republic of Austria and the Organization of the Petroleum Exporting Countries Regarding the Headquarters of the Organization of the Petroleum Exporting Countries, signed February 18, 1974 ........................................................3,4,5,6,7,8

Agreement Between the United Nations and the United States Regarding the Headquarters of the United Nations, signed June 26, 1947 .................................................... 5,6

*\*Asterisks indicate authorities chiefly relied on*

Agreement Regarding the Headquarters of the Food and Agriculture
    Organization of the United Nations, signed October 31, 1950,
    art. III, § 7(a), 1409 U.N.T.S. 23602 .................................................. 5

Agreement Relating to the Headquarters of the International Bauxite
    Association between the International Bauxite Association and
    Jamaica, signed November 5, 1975, art. III, § 4, 1021 U.N.T.S.
    15000 ................................................................................................. 5

Austrian Federal Law on the Service of Legal Documents (*Zustellgesetz*),
    § 7 ...................................................................................................... 8

*Austrian Federal Law on the Service of Legal Documents (*Zustellgesetz*),
    § 11(2) ........................................................................................... 3,7,8

Charter of the United Nations,
    Article 2, www.un.org/en/documents/charter/chapter1.shtml ............. 9

Federal Rule of Civil Procedure 4 ............................................................. 9

Headquarters Agreement between the Organization of American States
    and the Government of the United States of America, signed May
    14, 1992, art. IX, § 1, http://oas.org/legal/english/docs/Bilateral
    Agree/us/sedeusa.htm .................................................................... 5

Note Verbale to OPEC, dated June 21, 2012 ........................................ 2,3

*Asterisks indicate authorities chiefly relied on*

## INTEREST OF AMICUS CURIAE

The Republic of Austria, a sovereign nation, appears as amicus curiae in support of appellee, the Organization of the Petroleum Exporting Countries ("OPEC").[1]

As a major center of international diplomacy, Austria serves as the home of a number of important international organizations, including the United Nations (office at Vienna), the United Nations Industrial Development Organization, the International Atomic Energy Agency, OPEC, and the OPEC Development Fund. Each of these international organizations operates in Austria under a treaty, known as a headquarters agreement, negotiated and entered into between the organization and Austria. Each headquarters agreement is formally approved by the Austrian Parliament in accordance with the Austrian Constitution and is an integral part of Austrian law.

This case involves attempted service on OPEC in Austria and specifically raises the issue whether service of process on OPEC within its headquarters seat in Vienna by registered mail, by hand, or by any other means without the assistance of the Federal Ministry for European and International Affairs and the express consent

---

[1] Austria's appearance and filing of this amicus brief is not, and should not be deemed, a submission of the foreign sovereign to the jurisdiction of the United States nor a waiver in any respect of its sovereign immunity.

1

of OPEC's Secretary General is prohibited under Austrian law. Austria has a strong interest in ensuring proper interpretation of and due respect for Austrian law, including international agreements entered into with international organizations having their headquarters in Austria.  Austria regards the regulation of service of process within its territory as an aspect of its sovereignty. Having submitted its views on this matter to OPEC in a note verbale, Austria now wishes to be heard by the Court of Appeals.

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY HELD THAT AUSTRIAN LAW PROHIBITS SERVICE ON OPEC WITHOUT THE ASSISTANCE OF THE FEDERAL MINISTRY FOR EUROPEAN AND INTERNATIONAL AFFAIRS AND THE CONSENT OF OPEC'S SECRETARY GENERAL

#### A. Service On OPEC Is Prohibited Except In Compliance With Austrian Law

As a general matter, in the Republic of Austria, as in many other European civil law countries, the service of legal documents is a governmental act performed in the exercise of sovereign authority. In the absence of applicable international agreements or specific Austrian laws authorizing a particular form of service, Austria regards the direct service of foreign legal documents in its territory by foreign authorities or by private individuals without the assistance or explicit or implicit

2

consent of the competent Austrian authorities to be an infringement of its sovereignty.

Service of legal process in Austria must be effected in accordance with the rules and procedures prescribed by the Austrian Federal Law on the Service of Legal Documents (*Zustellgesetz*), Austrian Federal Law Gazette, BGBl. No. 200/1982, as amended. The *Zustellgesetz* requires a specific procedure for service of legal documents on international organizations entitled to privileges and immunities. Under Paragraph 11(2) of the *Zustellgesetz*, service on international organizations entitled to privileges and immunities can be carried out only with the assistance of the Federal Ministry for European and International Affairs. See Ex. 1, §11(2) *Zustellgesetz*. This provision prohibits any other form of service of legal documents (including service by mail or hand) on international organizations (including OPEC) without the involvement and assistance of the Austrian Foreign Ministry. See §11(2) *Zustellgesetz* ("[T]he mediation of the Federal Ministry for European and International Affairs *shall* be enlisted...") (emphasis added).

In addition, service on OPEC is also governed by the Headquarters Agreement entered into between Austria and OPEC on February 18, 1974 (the "Headquarters Agreement"), which contains special provisions on the organization's privileges and

3

immunities and the inviolability of its headquarters seat, including a provision on service of process. See Ex. 2, Headquarters Agreement between the Republic of Austria and OPEC published in the Austrian Federal Law Gazette, BGBL 382/1974, as amended. In particular, Article 5(2) of the Headquarters Agreement regulates the proper method of service within the headquarters seat of OPEC, and specifically requires express consent by OPEC's Secretary General. The Headquarters Agreement is an integral part of Austrian law as a result of its approval by the Austrian Federal Parliament in accordance with Article 50(1) of the Austrian Constitution and entered into force as Austrian law on July 11, 1974. Austria has explained its laws on proper service on OPEC in an official diplomatic note, known as Note Verbale, to OPEC. See Ex. 3, Note Verbale to OPEC, dated June 21, 2012. The Note Verbale described the two relevant aspects of Austrian law:

- Paragraph 11(2) of the Austrian law on Service of Legal Documents requires that service on international organizations entitled to privileges and immunities shall be carried out with the assistance of the Austrian Federal Ministry for European and International Affairs. This excludes any other form of service of legal documents on such international organizations, including OPEC.

- Article 5(2) of the Headquarters Agreement between OPEC and Austria

provides that "the service of legal process, including the seizure of private property, shall not take place within the headquarters seat except with the express consent of, and under conditions approved by, the Secretary General." This international agreement, which was approved by the Austrian Parliament in accordance with Article 50 of the Austrian Constitution, is an integral part of Austrian law.

The service of process provision in Austria's Headquarters Agreement with OPEC is a normal and customary provision in such agreements. For instance, the service provision of the headquarters agreement between the United States and the United Nations, like many other similar agreements,[2] exactly mirrors the service

---

[2] Numerous other headquarters agreements entered into with host States of various regions in the world contain identical provisions. *See e.g.* Headquarters Agreement between the Organization of American States and the Government of the United States of America, signed May 14, 1992, art. IX, § 1, <http://oas.org/legal/english/docs/BilateralAgree/us/sedeusa.htm> ("The service and execution of legal process . . . may take place within the Headquarters only with the consent of and under conditions approved by the Secretary General."); Agreement Regarding the Headquarters of the Food and Agriculture Organization of the United Nations, signed October 31, 1950, art. III, § 7(a), 1409 U.N.T.S. 23602 ("The service of legal process . . . may take place within the headquarters seat only with the consent of, and under conditions approved by, the Director-General."); and the Agreement Relating to the Headquarters of the International Bauxite Association between the International Bauxite Association and Jamaica, signed November 5, 1975, art. III, § 4, 1021 U.N.T.S. 15000 ("The service of legal process . . . may take place within the Headquarters premises only with the express prior consent of and under conditions approved by the Secretary General.")

provision of the OPEC Headquarters Agreement. The UN Headquarters Agreement expressly provides that "[t]he service of legal process . . . may take place within the headquarters district only with the consent of and under conditions approved by the Secretary-General." UN Headquarters Agreement, Article III, § 9(a), June 26, 1947, 61 Stat. 3416, *reprinted at 22 U.S.C.A. § 287* note (1988).

Federal courts have consistently recognized headquarters agreements as controlling law. *See*, *e.g.*, *Kadic v. Karadzic*, 70 F.3d 232, 247-248 (2d Cir. 1995) (United Nations Headquarters Agreement); *Alpha Lyracom Space Communications, Inc. v. Communications Satellite Corp.*, 946 F.2d 168, 173-76 (2d Cir. 1991)(International Telecommunications Satellite Organization Headquarters Agreement); *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 48, 54 (2d Cir. 1991)(United Nations Headquarters Agreement) ; *United States v. Dizdar*, 581 F.2d 1031, 1034-1035 (2d Cir. 1978)(same). Indeed, in *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916 (2003), the Eleventh Circuit ruled, based on the Headquarters Agreement at issue here, that "Austrian law clearly provides protection to OPEC as an international organization from all methods of service of process without its consent and also requires that any service of process from abroad be effected through Austrian authorities." *Id.* at 928.

In summary, Freedom Watch's attempted service of legal process on OPEC

within its headquarters seat in Vienna, by registered mail, by hand and/or through various other methods without the assistance of the Federal Ministry for European and International Affairs and the express consent of OPEC's Secretary General is invalid and prohibited by Austrian law even though OPEC actually received the summons and complaint and reacted to it. To be valid under Austrian law, service of legal process must be effected in accordance with Paragraph 11(2) of the *Zustellgesetz* and Article 5(2) of the Headquarters Agreement.

### B.    Freedom Watch's Arguments To Justify Its Violation of Austrian Law Are Erroneous

Although Freedom Watch concedes that in *Prewitt*, *supra*, service was improper because of the method of service (registered mail) which was specifically prohibited, it argues here that it made every reasonable effort and has exhausted "all plausible means," to ensure that OPEC was properly served under Austrian law. Freedom Watch Brief, p. 11. However, the "all plausible means" chosen did not include a way of service valid under Austrian law. Any method of service other than the one prescribed in Article 5(2) of the Headquarters Agreement and Paragraph 11(2) of the *Zustellgesetz* is contrary to both Austrian and international law. See Exs. 2 and 3.

The defect in service resulting from Freedom Watch's failure to serve OPEC

7

under the Headquarters Agreement and with the assistance of the Austrian Foreign Ministry is not cured either by OPEC's actual receipt of the summons and complaint or by the fact that OPEC had actual notice of this lawsuit nor the fact that Freedom Watch attempted service through various methods. Not every defect of service may be cured by actual notice, as provided in some cases by §7 of the *Zustellgesetz*. See Ex. 4. In particular, this provision does not apply when service was attempted in violation of international agreements, as was held by the Austrian Administrative Court ("*Verwaltungsgerichtshof*"), the highest Austrian Court in administrative matters. As explained in *Prewitt, supra*, at 924, n. 17, the Administrative Court authoritatively determined that in such cases the attempted service of process cannot be cured by actual notice under §7, because breaches of express prohibitions of service in international agreements—and thus the infringement of another state's sovereignty—should not go unpunished.

The fact that OPEC actually received Freedom Watch's summons and complaint does not, under Austrian law, cure Freedom Watch's attempted service in violation of the *Zustellgesetz* and the Headquarters Agreement. The district court in its memorandum opinion of January 15, 2013, therefore, correctly concluded that "Freedom Watch, like the plaintiff in *Prewitt*, has failed to perfect service of process on OPEC in accordance with [Federal] Rule [of Civil Procedure] 4(f)." Mem. Op. at

4.

Freedom Watch also asked the district court to use its discretionary power to authorize an alternate method of service on OPEC that is prohibited by Austrian law. Freedom Watch Brief, p. 16. Out of respect for Austrian law, and following *Prewitt*, *supra*, the district court appropriately exercised its discretion under the applicable Federal Rule of Civil Procedure to decline to order service in a manner prohibited by Austrian law. Mem. Op. at 5.

The district court's ruling is a welcome example of respect for another sovereign state. That respect accords with one of the most fundamental principles of international law—the sovereign equality of states—which is expressed, for example, in Article 2 of the Charter of the United Nations. <www.un.org/en/documents/charter/chapter1.shtml>. Such respect further implies that under the doctrine of comity of nations, for service of process in a foreign state to be valid, it must not violate the sovereignty of the foreign country. *See*, *e.g.*, *Tucker v. Interarms*, 186 F.R.D. 450, 452 (N.D. Ohio 1999) ("principles of international comity impact the requirements for service of process"), citing *Commodity Futures Trading Com'n v. Nahas*, 738 F.2d 487, 494 (D.C. Cir. 1984)(giving effect to Brazilian service of process law); *In re Ski Train Fire in Kaprun*, No. 1428 (SAS), 01 Civ. 7342, 2003 WL 1807148, at *7 (S.D.N.Y. April 4, 2003); *Alpha Omega*

*Tech., Inc. v. PGM-Comercio e Participacoes Ltda.*, No. 93 Civ. 6257, 1994 WL 37787, at *1 (S.D.N.Y. Feb. 9, 1994) (doctrine of comity of nations provides that service in violation of the law of a foreign country is ineffective).  Freedom Watch's unsubstantiated defamations of Austria's laws and policies, such as "Austria's corrupt practices and laws" and "unjust Austrian policies" on this appeal (Freedom Watch Brief, p. 16), clearly shows Freedom Watch's lack of understanding of the principles of public international law and the peaceful relations between sovereign states.

In summary, Freedom Watch's arguments on the validity of service on OPEC in this case are incorrect as a matter of Austrian law and therefore, as OPEC explains, United States law.   OPEC Brief, pp. 16-22.

## CONCLUSION

For the foregoing reasons, and the reasons given in OPEC's brief, the decision of the district court should be affirmed.

10

Respectfully submitted,

/s/ Thomas G. Corcoran, Jr.

Thomas G. Corcoran, Jr.
BERLINER, CORCORAN & ROWE, L.L.P.
1101 17th Street, N.W., Suite 1100
Washington, DC 20036-4798
[Tel] 202-293-5555
[Fax] 202-293-9035

*Attorney for Amicus Curiae*
*Republic of Austria*

Date: August 21, 2013

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 2,359 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using WordPerfect in 14-point Times New Roman.

/s/ Thomas G. Corcoran, Jr.
Thomas G. Corcoran, Jr.
*Attorney for Amicus Curiae*

Date: August 21, 2013

12

## CERTIFICATE OF COMPLIANCE WITH RULE 29(c)(5)

No parties' counsel authored the brief in whole or in part.  Although suggestions were received from counsel for OPEC and some were accepted, the undersigned considered and independently decided upon every word in this brief. No party nor a party's counsel contributed money that was intended to fund preparing or submitting the brief.  No person—other than the amicus curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

<u>/s/ Thomas G. Corcoran, Jr.</u>
Thomas G. Corcoran, Jr.
*Attorney for Amicus Curiae*

Date: August 21, 2013

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 21 day of August, 2013, I caused to be served

an electronic copy of the foregoing Brief of Amicus Curiae Republic of  Austria  in

 Support  of Appellee Organization of Petroleum Exporting Countries and

Affirmance of the District Court's Order (No. 13-7019) with the Clerk of the Court

for the United States Court of Appeals for the District of Columbia Circuit by

filing on the CM/ECF system, and two true and correct paper copies by certified

mail on the following counsel for Plaintiff-Appellant Freedom Watch, Inc.:

> Larry Klayman
> Freedom Watch, Inc.
> 2020 Pennsylvania Avenue. N.W., Suite 345
> Washington, DC 20006
> (310) 595-0800
> leklayman@gmail.com

> /s/ Thomas G. Corcoran, Jr
> Thomas G. Corcoran, Jr.
> *Attorney for Amicus Curiae*

Date: August 21, 2013

14

# ADDENDUM OF EXHIBITS

Exhibit 1,
  Federal Law on the Service of Legal Documents (Zustellgesetz),
  §11(2) ................................................................................................ 16

Exhibit 2,
  Agreement Between the Republic of Austria and the Organization
  of the Petroleum Exporting Countries Regarding the Headquarters
  of the Organization of the Petroleum Exporting Countries ................ 17

Exhibit 3,
  Note Verbale ...................................................................................... 31

Exhibit 4,
  Federal Law on the Service of Legal Documents (Zustellgesetz),
  § 7 ...................................................................................................... 33

# Exhibit 1

**Federal Law on the Service of Legal Documents (Zustellgesetz)**

Special cases of service of delivery

§11.(2)For service to persons of foreign nationality or
international organizations having been granted privileges
and immunities under international law, the mediation of the
Federal Ministry for European and International Affairs,
shall be enlisted, no matter where they are resident or
located.

17

# Exhibit 2

*Volume 2098, I-36477*

[ English text — Texte anglais ]

## AGREEMENT BETWEEN THE REPUBLIC OF AUSTRIA AND THE OR-GANIZATION OF THE PETROLEUM EXPORTING COUNTRIES RE-GARDING THE HEADQUARTERS OF THE ORGANIZATION OF THE PETROLEUM EXPORTING COUNTRIES

The Republic of Austria and the Organization of the Petroleum Exporting Countries, desiring to conclude a new agreement regarding the seat of the Organization of the Petroleum Exporting Countries in the City of Vienna and to regulate questions connected therewith, have agreed as follows:

*Article 1*

When used in this Agreement,

a)  "OPEC" means the Organization of the Petroleum Exporting Countries;

b)  "The Government" means the Federal Government of the Republic of Austria;

c) "Secretary General" means the Secretary General of OPEC or any officer designated to act on his behalf;

d) "Member Country  means a State which is a member of OPEC;

e) "Governor" means a member of the Board of Governors of OPEC, as defined in the Statute of OPEC;

f) "Representatives of Member Countries" means accredited representatives of Member Countries and members of their delegations, but does not include administrative and technical or other auxiliary staff;

g) ''Meeting convened by OPEC" means any meeting of the Conference of OPEC or of the Board of Governors of OPEC, or any international conferences or other gatherings convened by OPEC or under its sponsorship;

h)"Archives of OPEC" means records and correspondence, documents, manuscripts, still and moving pictures, films and sound recordings belonging to or held by OPEC;

i) "Officials of OPEC" means the Secretary General and all members of the staff of OPEC, except those who are locally recruited and assigned to hourly rates;

j) "Property" means all property, including funds and other assets, belonging to OPEC in furtherance of its statutory functions and all income of OPEC; and

k) "Headquarters"means the headquarters area with the building or buildings upon it, as defined in a supplemental agreement between the Government and OPEC, and the Secretary General's Residence, and, as the case may be, any other land or building which may from time to time be included, temporarily or permanently, therein in accordance with the provisions of Article 2 (2)

*Article 2*

(1) The permanent headquarters of OPEC, as approved by Resolution of the Conference of OPEC and as defined in the supplemental agreement between the Government and OPEC referred to in Article 1 k), shall be in the headquarters seat.

(2) Any building outside the headquarters seat which is used with the concurrence of the Government for meetings convened by OPEC shall be temporarily included in the headquarters seat.

*Article 3*

(1) The Government recognizes the extra-territoriality of the headquarters seat, which shall be under the control and authority of OPEC as provided in this Agreement.

(2) Except as otherwise provided in this Agreement and subject to any regulation enacted under Article 4, the laws of the Republic of Austria shall apply within the headquarters seat.

(3) Except as otherwise provided in this Agreement, the courts or other appropriate organs of the Republic of Austria shall have jurisdiction, as provided in applicable laws, over acts done and transactions taking place in the headquarters seat.

*Article 4*

(1) OPEC shall have the power to make regulations, operative within the headquarters seat, for the purpose of establishing therein conditions in all respects necessary for the full execution of its functions. No law of the Republic of Austria which is inconsistent with a regulation of OPEC authorized by this Article shall, to the extent of such inconsistency, be applicable within the headquarters seat. Any dispute between the Republic of Austria and OPEC as to whether a regulation of OPEC is authorized by this Article or as to whether a law of the Republic of Austria is inconsistent with any regulation of OPEC authorized by this Article, shall be promptly settled by the procedure set out in Article 29. Pending such settlement, the regulation of OPEC shall apply and the law of the Republic of Austria, shall be inapplicable in the headquarters seat to the extent that OPEC claims it to be inconsistent with the regulation of OPEC.

(2) OPEC shall from time to time inform the Government, as may be appropriate, of regulations made by it in accordance with paragraph 1.

(3) This Article shall not prevent the reasonable application of fire protection or sanitary regulations of the appropriate Austrian authorities.

*Article 5*

(1) The headquarters seat shall be inviolable. No officer or official of the Republic of Austria, or other person exercising any public authority within the Republic of Austria, shall enter the headquarters seat to perform any duties therein except with the consent of, and under conditions approved by, the Secretary General. The consent of the Secretary

General may, however, be assumed in case of fire or other disaster requiring prompt protective action.

(2) The service of legal process, including the seizure of private property, shall not take place within the headquarters seat except with the express consent of, and under conditions approved by, the Secretary General.

*Article 6*

(1) The appropriate Austrian authorities shall exercise due diligence to ensure that the tranquility of the headquarters seat is not disturbed by any person or group of persons attempting unauthorized entry into or creating disturbances in the immediate vicinity of the headquarters seat, and shall provide on the boundaries of the headquarters seat such police protection as may be required for these purposes.

(2) If so requested by the Secretary General, the appropriate Austrian authorities shall provide a sufficient number of police for the preservation of law and order in the headquarters seat.

(3) The appropriate Austrian authorities shall take all reasonable steps to ensure that the amenities of the headquarters seat are not prejudiced and that the purposes for which the headquarters seat is required are not obstructed by any use made of the land or buildings in the vicinity of the headquarters seat. OPEC shall take all reasonable steps to ensure that the amenities of the land in the vicinity of the headquarters seat are not prejudiced by any use made of the land or buildings in the headquarters seat.

*Article 7*

The Government recognizes the juridical personality of OPEC and, in particular, its capacity:

a) To contract;

b) To acquire and dispose of movable and immovable property; and

c) To institute legal proceedings.

*Article 8*

The Government recognizes the right of OPEC to convene meetings within the headquarters seat or, with the concurrence of the Government, elsewhere in the Republic of Austria.

*Article 9*

OPEC and its property, wherever located and by whomsoever held, shall enjoy immunity from every form of legal process except in so far as in any particular case OPEC shall have expressly waived its immunity. It is, however, understood that no waiver of immunity shall extend to any measure of execution.

*Article 10*

The property of OPEC, wherever located and by whomsoever held, shall enjoy immunity from search, requisition, confiscation, expropriation and any other form of interference, whether by executive, administrative, judicial or legislative action.

*Article 11*

The archives of OPEC shall be inviolable wherever located.

*Article 12*

(1) OPEC, its assets, income and other property shall be exempt from all forms of taxation, provided, however, that such tax exemption shall not extend to the owner or lessor of any property rented by OPEC.

(2) In so far as the Government, for important administrative considerations, may be unable to grant to OPEC exemption from indirect taxes which constitute part of the cost of goods purchased by or services rendered to OPEC, including rentals, the Government shall reimburse OPEC for such taxes by the payment, from time to time, of lump sums to be agreed upon by the Government and OPEC. It is, however, understood that OPEC will not claim reimbursement with respect to minor purchases. With respect to such taxes, OPEC shall at all times enjoy at least the same exemptions and facilities as are granted to Austrian governmental administrations or to chiefs of diplomatic missions accredited to the Republic of Austria, whichever are the more favourable. It is further understood that OPEC will not claim exemption from taxes which are in fact no more than charges for public utility services.

(3) All transactions to which OPEC is a party, and all documents recording such transactions, shall be exempt from all taxes, recording fees, and documentary taxes.

(4) Articles imported or exported by OPEC for official purposes shall be exempt from customs duties and other levies, and from prohibitions and restrictions on imports and exports.

(5) OPEC shall be exempt from customs duties and other levies, prohibitions and restrictions on the importation of service automobiles, and spare parts thereof, required for its official purposes.

(6) The Government shall, if requested, grant allotments of gasoline or other fuels and lubricating oils for each such automobile operated by OPEC in such quantities as are required for its work and at such special rates as may be established for diplomatic missions in the Republic of Austria.

(7) Articles imported in accordance with paragraphs (4) and (5) or obtained from the Government in accordance with paragraph (6) of this Article, shall not be sold by OPEC in the Republic of Austria within two years of their importation or acquisition, unless otherwise agreed upon by the Government.

22

*Article 13*

OPEC shall enjoy, as far as may be compatible with any international conventions, regulations and arrangements to which the Government is a party, for its official communications, treatment not less favourable than that accorded by the Government to any other organization or government, including diplomatic missions of such other government, in the matter of priorities and rates for mails, cables, telegrams, radiograms, telephotos , television, telephone and other communications, and press rates for information to press and radio.

*Article 14*

(1) All official communications directed to OPEC, or to any of its officials at the headquarters seat, and all outward official communications of OPEC, by whatever means or in whatever form transmitted, shall be immune from censorship and from any other form of interception or interference with their privacy.

(2) OPEC shall have the right to use codes and to dispatch and receive correspondence and other official communications by courier or in sealed bags, which shall have the same privileges and immunities as diplomatic couriers and bags.

*Article 15*

(1) Without being subject to any controls or regulations of any kind, OPEC may freely for official purposes:

a) Purchase any currencies through authorized channels and hold and dispose of them;

b) Operate accounts in any currency;

c) Purchase through authorized channels, hold and dispose of funds and securities; and

d) Transfer its funds, securities and currencies to or from the Republic of Austria, to or from any other country, or within the Republic of Austria.

(2) The provisions of paragraph 1 shall not apply to amounts in Austrian currency, which are subject to the Austrian regulations concerning blocked accounts, nor shall they affect any international payments agreements of the Republic of Austria which are in force.

*Article 16*

Any pension fund or provident fund established by or conducted under the authority of OPEC shall enjoy legal capacity in the Republic of Austria if OPEC so requests, and shall enjoy the same exemptions, immunities and privileges as OPEC itself.

*Article 17*

OPEC shall be exempt from all compulsory contributions to, and officials of OPEC shall not be required by the Government to participate in, any social security scheme of the Republic of Austria.

23

*Article 18*

The Government shall make such provision as may be necessary to enable any official of OPEC who is not afforded social security coverage by OPEC to participate, if OPEC so requests, in any social security scheme of the Republic of Austria. OPEC shall, insofar as possible, arrange, under conditions to be agreed upon, for the participation in the Austrian social security system of those locally recruited or temporarily employed members of its staff to whom it does not grant social security protection at least equivalent to that offered under Austrian law.

*Article 19*

(1) The Government shall take all necessary measures to facilitate the entry into, and sojourn in Austrian territory and shall place no impediment in the way of the departure from Austrian territory of the persons listed below, shall ensure that no impediment is placed in the way of their transit to or from the headquarters seat and shall afford them any necessary protection in transit:

a) Representatives of Member Countries and their families;

b) Governors and their families;

c) Officials of OPEC, their families and other members of their households;

d) Persons, other than officials of OPEC, performing missions authorized by OPEC or serving on specialized organs of OPEC, working parties or other subsidiary bodies of OPEC, and their spouses;

e) Representatives of States which are not Members of OPEC who are sent as observers, in accordance with rules adopted by OPEC, to meetings convened by OPEC;

and

f) Representatives of other organizations or other persons invited by OPEC to the headquarters seat on official business.

(2) Visas which may be required by persons referred to in this Article shall be granted without charge as promptly as possible.

*Article 20*

Representatives of Member Countries, Governors and representatives of States which are not Members of OPEC who are sent as observers, in accordance with rules adopted by OPEC, to meetings convened by OPEC shall, without prejudice to any other privileges and immunities which they may enjoy while exercising their functions and during their journeys to and from the headquarters seat, enjoy within and with respect to the Republic of Austria, the following privileges and immunities:

a) Immunity in respect to themselves, their spouses and dependent children from personal arrest or detention and from seizure of their personal baggage;

b)Immunity from legal process of any kind in respect of words spoken or written, and of all acts done by them, in the performance of their official function, such immunity to

24

continue notwithstanding that the persons may no longer be engaged in the performance of such functions;

c) Inviolability of all papers and documents;

d) The right to use codes and to dispatch or receive papers and correspondence by courier or in sealed bags;

e) Exemption, in respect of themselves, their spouses and dependent children from immigration restrictions, alien registration and national service obligations;

f) The same privileges with respect to currency and exchange restrictions as the Government accords to representatives of foreign Governments on temporary official missions; and

g) The same immunities and facilities with respect to their personal and official baggage as the Government accords to members, having comparable rank, of diplomatic missions in the Republic of Austria.

*Article 21*

The privileges and immunities accorded by Article 20 are conferred, not for the personal benefit of the individuals themselves, but in order to safeguard the independent exercise of their functions in connexion with OPEC. Consequently, it is incumbent upon a Member Country as well as upon any State sending observers to waive the immunity of any of its representatives or of the Governor nominated by the respective State, in any case where, in the judgment of the Member Country, the immunity would impede the course of justice and where it can be waived without prejudice to the purposes for which it was accorded.

*Article 22*

Officials of OPEC shall enjoy within and with respect to the Republic of Austria the following privileges and immunities:

a) Immunity from legal process of any kind in respect of words spoken or written, and of acts performed by them, in their official capacity; such immunity to continue notwithstanding that the persons concerned may have ceased to be officials of OPEC;

b) Immunity from seizure of their personal and official baggage;

c) Immunity from inspection of official baggage, and, if the official comes within the scope of Article 23, immunity from inspection of personal baggage;

d) Exemption from taxation in respect of the salaries, emoluments, indemnities and pensions paid to them by OPEC for services past or present or in connexion with their service with OPEC;

e) Exemption from any form of taxation on income derived by them from sources outside the Republic of Austria;

f) Exemption, with respect to themselves, their spouses, their dependent relatives and other members of their households from immigration restrictions and alien registration;

g) Freedom to acquire or maintain within the Republic of Austria or elsewhere foreign securities, foreign currency accounts, and other movable and under the same conditions applicable to Austrian nationals immovable property; and at the termination of their OPEC employment, the right to take out of the Republic of Austria through authorized channels without prohibition, or restriction, their funds in the same currency and up to the same amounts as they had brought  into the Republic of Austria;

h) The same protection and repatriation facilities with respect to themselves, their spouses, their dependent relatives and other members of their households as the Government accords in time of international crises to members, having comparable rank, of diplomatic missions in the Republic of Austria; and

i) The right to import for personal use, free of duty and other levies, prohibitions and restrictions on imports:

(i) Their furniture and effects in one or more separate shipments, and thereafter to import necessary additions to the same;

(ii) At the time of first installation two cars; however, customs duties are to be paid if they are sold in the Republic of Austria within a period of two years, the lapse of time being counted from the date of importation;

(iii) Limited quantities of certain articles for personal use or consumption and not for gift or sale; OPEC shall enjoy the right to establish a commissary of its own or its officials shall have access to one of the existing commissaries in Vienna; a supplemental agreement shall be concluded to regulate the exercise of these rights.

### *Article 23*

In addition to the privileges and immunities specified in Article 22:

a) The Secretary General shall be accorded in respect of himself, his spouse and his dependent children, the privileges and immunities, exemptions and facilities accorded to ambassadors who are chiefs of mission;

b) The Deputy Secretary General, the Chiefs of the Departments, Senior Officers and such additional categories of officials as may be designated, in agreement with the Government, by the Secretary General on the ground of the responsibilities of their positions in OPEC the same privileges and immunities, exemptions and facilities as the Government accords to members, having comparable rank, of diplomatic missions in the Republic of Austria.

### *Article 24*

(1) Persons, other than officials of OPEC, performing missions authorized by OPEC or serving on specialized organs of OPEC, working parties or other subsidiary bodies of OPEC and representatives of other organizations or other persons invited by OPEC to the headquarters seat on official business shall, without prejudice to any other privileges and

immunities which they may enjoy for other reasons, enjoy immunity from legal process of any kind in respect of words spoken or written, and of acts performed by them in direct connexion with their official business.

(2) They shall further enjoy the same protection and repatriation facilities with respect to themselves, their spouses their dependent relatives and other members of their households as the Government accords in time of international crises to members, having comparable rank, of diplomatic missions in the Republic of Austria.

(3) Where the incidence of any form of taxation depends upon residence, periods during which the persons referred to in paragraph 1 may be present in the Republic of Austria for the discharge of their duties shall not be considered as periods of residence.

*Article 25*

(1) The privileges and immunities accorded by Articles 22, 23 and 24 are conferred in the interest of OPEC and not for the personal benefit of the individuals themselves. Consequently, it is incumbent upon the Organization to waive the immunity of any of its officials or of any person covered by the provision of Article 24 in all cases where the immunity impedes the course of justice and where it can be waived without prejudice to the interest of OPEC. In any case where these privileges and immunities arise, the official or other person involved shall immediately report to the Secretary General, who shall decide, in consultation, where appropriate, with the Board of Governors, whether they shall be waived. In the case of the Secretary General, the Conference of OPEC shall have the right to waive immunities.

(2) OPEC and its officials shall co-operate at all times with the appropriate Austrian authorities to facilitate the prompt execution of the laws of the Republic of Austria and to prevent the occurrences of any abuses in connexion with the privileges and immunities accorded by this Agreement.

*Article 26*

All persons of Austrian citizenship and all stateless persons resident in Austria and employed by OPEC shall enjoy the privileges and immunities, exemptions and facilities accorded by this Agreement to the extent recognized by international law as accepted by the Government, provided, however, that Article 17 shall not and Article 22 (d) shall, in any event, apply to officials of OPEC who are Austrian citizens or who are stateless persons resident in Austria. The shall also have access to the commissary established in accordance with Article 22 paragraph i subparagraph (iii), the exercise of this right being regulated by the supplemental agreement provided for in that subparagraph.

*Article 27*

(1) OPEC shall communicate to the Government a list of persons within the scope of Articles 20, 22 and 24 and shall revise such list from time to time as may be necessary.

(2) The Government shall furnish persons within the scope of Article 22 with an identity card bearing the photograph of the holder. This card shall serve to identify the holder in relation to all Austrian authorities.

*Article 28*

The Secretary General shall take every precaution to ensure that no abuse of a privilege or immunity conferred by this Agreement shall occur. Should the Government consider that abuse of a  privilege or immunity conferred by this Agreement has occurred, the Secretary General shall upon request, consult with the Federal Minister  for Foreign Affairs of the Republic of Austria to determine whether any such abuse has occurred. If such consultations fail to achieve within a reasonable time a result satisfactory to the Government and to the Secretary General, the matter may be referred by either party for final decision to a tribunal of three arbitrators: one to be chosen by the Federal Minister for Foreign Affairs of the Republic of Austria, one to be chosen by the Secretary General and the third, who shall be chairman of the tribunal, to be chosen by the first two arbitrators. If the tribunal is not constituted within three months from the date of the request made for the submission of the dispute to arbitration, the appointment of the arbitrators not yet designated shall be made by the President of the International Court of Justice at the request of the Government or of OPEC.

*Article 29*

Any dispute which may arise between the Government and OPEC as to the interpretation or application of this Agreement, shall, at the request of either of them, be referred to arbitration. The arbitration tribunal shall consist of three arbitrators: one to be chosen by the Federal Minister for Foreign Affairs of the Republic of Austria, one to be chosen by the Secretary General and the third, who shall be chairman of the tribunal, to be chosen by the first two arbitrators. If the tribunal is not constituted within six months from the date of the request made for the submission of the dispute to arbitration, the appointment of the arbitrators not yet designated shall be made by the President of the International Court of Justice at the request of the Government or of OPEC.

*Article 30*

(1) This Agreement shall enter into force upon an exchange of notes between the Federal Minister for Foreign Affairs of the Republic of Austria and the Secretary General duly authorized thereto by Resolution of the Conference of OPEC.

(2) Upon the entry into force of this Agreement the "Agreement between the Republic of Austria and the Organization of the Petroleum Exporting Countries regarding the Headquarters of the Organization of the Petroleum Exporting Countries" of June 24, 1965, ceases to be in force.

*Volume 2098, I-36477*

(3) Consultations with respect to modification of this Agreement shall be entered into at the request of the Government or OPEC. Any such modification shall be by mutual consent.

(4) This Agreement shall be construed in the light of its primary purpose of enabling OPEC at its headquarters in the Republic of Austria fully and efficiently to discharge its responsibilities and fulfill its purposes.

In witness thereof, the respective representatives of the Republic of Austria and of the Organization of the Petroleum Exporting Countries have signed this Agreement.

Done in duplicate in Vienna, this day of February 18 of 1974, in the German and English languages, both texts being equally authoritative.

For the Republic of Austria:

RUDOLF KIRCHSCHLÄGER M. P.


For the Organization of the Petroleum Exporting Countries:

DR. A. KHENE M. P.

I

THE FEDERAL MINISTER FOR FOREIGN AFFAIRS

Vienna, February 18, 1974

Excellency,

With reference to the Agreement between the Organization of the Petroleum Exporting Countries and the Republic of Austria regarding the Headquarters of the Organization of the Petroleum Exporting Countries, to which I have this day affixed my signature, I have the honour to propose that:

(1) The articles mentioned in paragraph (7) of Article 12 of the Agreement may be disposed of without charge only for the benefit of international organizations or charitable institutions.

(2) Having regard to Article 38 (1) of the Vienna Convention on Diplomatic Relations and to the practice of Austria, the Republic of Austria will accord persons referred to in Article 26 of the Agreement – persons of Austrian citizenship and stateless persons resident in Austria -- only the immunity from legal process of any kind in respect of words spoken or written, and of acts performed by them in direct connexion with their official business.

(3) In accordance with the practice of the Republic of Austria which is in conformity with Article 42 of the Vienna Convention on Diplomatic Relations to which Austria is a party, diplomatic agents accredited to the Republic of Austria may not practice for personal profit any professional or commercial activity. It is understood that the same restriction shall apply to all persons to whom the Agreement accords the same privileges and immunities as are accorded to members, having comparable rank, of diplomatic missions in the Republic of Austria.

(4) Persons to whom the Agreement applies, who are not Austrian nationals or stateless persons resident in Austria, shall not benefit from Austrian regulations governing family and maternity allowances.

(5) Without prejudice to the provision of Article 22 (g) of the Agreement, officials of OPEC and persons, other than officials of OPEC, performing missions authorized by OPEC or serving on specialized organs of OPEC, working parties or other subsidiary bodies of OPEC shall be allowed, over and above the facilities granted by the Agreement, to make transfers to other countries up to a maximum amount of one thousand U.S. dollars (U.S. $ 1,000.00) per year, to the debit of accounts in Austrian Schilling held in their names at Austrian credit institutions; if the afore-mentioned persons wish to make Austrian currency transfers exceeding the amount mentioned above, such transfers shall be authorized by the Austrian authorities up to the amount of all salary previously received in Austrian currency by the person concerned from OPEC, provided that OPEC agrees that the amount to be transferred shall be deducted from transferable Austrian currency balances of OPEC.

30

*Volume 2098, I-36477*

    If OPEC agrees to this proposal, I have the honour to propose that this note and your note of confirmation shall constitute an Agreement between OPEC and the Republic of Austria, entering into force on the same day as the Headquarters Agreement.

    Accept, Excellency, the assurances of my highest consideration.

RUDOLF KIRCHSCHLÄGER M. P.


His Excellency Dr. Abderrahman Khene
    Secretary General of the Organization of the Petroleum Exporting Countries, Vienna

II

ORGANIZATION OF THE PETROLEUM EXPORTING COUNTRIES

SECRETARY GENERAL

Vienna, 18 February, 1974

Excellency,

I have the honour to acknowledge receipt of your note of 18 February, 1974, which reads as follows:

*[See note I]*

I have the honour to confirm that OPEC agrees with the above proposal and that your note and this reply will constitute an Agreement between OPEC and the Republic of Austria, entering into force on the same day as the Headquarters Agreement.

Accept, Excellency, the assurances of my highest consideration.

DR. A. KHENE M. P.
(Secretary General)

His Excellency Dr. Rudolf Kirchschläger
        Federal Minister for Foreign Affairs, Vienna

# Exhibit 3

Federal Ministry for
European and International Affairs

No. BMeiA-O2.8.19.19/0001-I.2/2012

# N o t e   V e r b a l e

The Federal Ministry for European and International Affairs presents its compliments to the Organization of the Petroleum Exporting Countries and, with reference to the Organization's Note Verbal of 8 June, has the honour to inform the Organization as follows:

Under both Austrian law and international agreements concluded between Austrian and international organisations based in Vienna, service of legal process on foreign citizens or international organisations entitled to privileges and immunities in general, and OPEC in particular, may only be effectuated through diplomatic channels, i.e. with the assistance of the Austrian Federal Ministry for European and International Affairs. As a consequence, any form of service on said persons or international organisations is to be considered contrary both to Austrian and international law.

The Austrian law on the Service of Legal Documents ("Zustellgesetz") provides in its Para. 11 (2) that the service of legal documents on foreign citizens or international organisations who are entitled to privileges and immunities shall be carried out with the assistance of the Austrian Federal Ministry for European and International Affairs. This excludes any other form of service of legal documents on such international organizations, including OPEC.

Specifically, with respect to service to OPEC, Article 5 (2) of the Agreement between the Republic of Austria and the OPEC regarding the Headquarters of the OPEC provides that "the service of legal process, including the seizure of private property, shall not take place within the headquarters seat except with the express consent of, and under conditions approved by, the Secretary General" (emphasis added). This international agreement, which was approved by the Austrian Parliament in

1014 VIENNA · Minoritenplatz 8 · Phone: +43-50 11 50-0 · Fax +43-50 11 59-0     DVR 0000060

accordance with Article 50 of the Austrian Constitution, is an integral part of Austrian law; the provision concerned corresponds to similar provisions of other headquarters agreements with international organisations based in Vienna (such as the United Nations Organization (Office at Vienna), the United Nations Industrial Development Organization and the International Atomic Energy Agency).

As result, any form of service on OPEC at its headquarters in Vienna that is not effectuated in accordance with the above-mentioned procedure is to be considered contrary both to Austrian an to international law. Such service has to be regarded as invalid and, therefore, also as "prohibited by Austrian law", without though implying criminal sanctions. Besides, there is no treaty between the European Union and the United States of America that would contravene this legal situation.

The Federal Ministry for European and International Affairs avails itself of this opportunity to renew to the Organization of the Petroleum Exporting Countries the assurances of its highest consideration.

Vienna, 21 June 2012



OPEC
Helferstorferstrasse 17
1010 Wien

35

# Exhibit 4

**Federal Law on the Service of Legal Documents (Zustellgesetz)**


Remedying faulty service

§ 7. In case errors occur during the service procedure, service is still considered to have been made as soon as the document has actually been received by the addressee.